FLETCHER v FLETCHER

Docket No. 97232. Argued November 1, 1994 (Calendar No. 6). Decided December 30, 1994.

Following a judgment of divorce, John D. Fletcher sought a hearing de novo in the Macomb Circuit Court regarding a referee's award of custody of his three minor children to their mother, Debra M. Fletcher. The court, Michael D. Schwartz, J., following the hearing, granted physical custody to the father and awarded liberal visitation rights and joint legal custody to the mother. The Court of Appeals, SHEPHERD, P.J., and BRENNAN, J. (L. P. BORRELLO, J., concurring), reversed the custody determination, concluding that the circuit court had made clearly erroneous findings of fact regarding the Child Custody Act best interests of the child factor f (moral fitness of the parties), and that clear legal errors had been made concerning factors b (love, guidance, and religious education), e (permanence of the custodial home), and f, and, after review de novo, found the parties to be equal on all the statutory factors except factor i (preferences of the children) (Docket No. 151145). The plaintiff appeals.

In separate opinions, the Supreme Court *held:*

Review de novo by an appellate court of the ultimate custodial disposition in a child custody case is inappropriate. Upon a finding of error, an appellate court should remand the case for reevaluation, unless the error was harmless. On remand, the trial court should consider up-to-date information, as well as any other changes in circumstances arising since the original custody order.

1. Child custody cases are to be reviewed in accordance with § 8 of the Child Custody Act. By its terms, findings of fact are to be reviewed under the great weight of evidence standard, discretionary rulings are to be reviewed for palpable abuse of discretion, and questions of law for clear legal error.

2. The great weight of evidence standard requires that a trial court's findings of fact regarding each best interest factor

REFERENCES

Am Jur 2d, Appeal and Error § 136.

See ALR Index under Appeal and Error.

should be affirmed unless the evidence clearly preponderates in the opposite direction. While palpable abuse of discretion is a high standard of review, it does not afford trial courts unfettered discretion in awarding custody; rather, such discretion is limited by the statutory best interest factors and by the fact that the trial court's ultimate finding regarding each particular factor must be supported by the great weight of the evidence. Review of questions of law for clear legal error requires that when a court incorrectly chooses, interprets, or applies the law, it commits legal error that an appellate court is bound to correct.

3. These standards of review preclude appellate review de novo. A true review of custody orders de novo would involve review of the record without deference to prior proceedings, with the appellate court making its own findings of fact and conclusions of law.

4. Because the trial court complied with the court rules and case law in considering factor b, its ruling was not clear legal error. However, the trial court erred in focusing on the acceptability of the home, a consideration not pertinent to factor e, and in its consideration of extramarital conduct in evaluating factor f, and the errors were not harmless. Thus, remand to the circuit court is required for reevaluation of up-to-date information and any changes in circumstances since the entry of the original custody order.

Justice LEVIN, joined by Justice MALLETT, writing separately, stated that the legislatively prescribed standard for appellate review set forth in MCL 722.28; MSA 25.312(8), construed as requiring an appellate court to defer to the trial court's exercise of discretion, provides inadequate appellate review, and should not be adopted by the Supreme Court.

Const 1963, art 6, §§ 1 and 4 provides that the Supreme Court ultimately is to decide the scope of appellate review. In the exercise of its power to prescribe practice and procedure, the Court adopted a rule obliging a trial court, in an action tried on the facts without a jury, to state the facts and, separately, its conclusions of law and direct entry of the appropriate judgment.

In this case, the majority in effect directs that a dispositional ruling concerning child custody should be reviewed by the Court of Appeals to determine only whether there was an abuse of discretion, unless the evidence respecting one or more of the legislatively prescribed best-interests-of-the-child factors clearly preponderates against a trial court finding. However, it is questionable whether the Court should appear to provide less

review of a trial judge's discretionary dispositional decision concerning child custody than is provided respecting a trial judge's discretionary dispositional decision awarding alimony or dividing property. Rather, there is sufficient flexibility in the clearly erroneous standard, and in the mandate that the trial court, after finding the facts, shall enter an appropriate judgment, so that it is unwise to continue to proliferate reviewing standards for actions tried to the court.

The Court should not defer, even on an experimental basis, to the legislatively prescribed child custody appellate review standard, great weight of the evidence and palpable abuse of discretion, construed as insulating from appellate review such decisions unless the evidence preponderates against a finding on one of the best-interests-of-the-child factors or there was an abuse of discretion requiring the appellant to show that the custody decision must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.

Justice GRIFFIN, joined by Justice RILEY, concurring in part and dissenting in part, stated that extramarital affairs are probative, though not dispositive, of moral fitness in evaluating the best interests of the child, factor f, under the Child Custody Act.

Factor f requires the trial court to consider the moral fitness of the parties when making a determination of the best interests of the child in a custody hearing. Because extramarital conduct is probative of moral fitness, it should be considered and evaluated in a fair and judicious manner.

Affirmed in part, reversed in part, and remanded.

200 Mich App 505; 504 NW2d 684 (1993) affirmed in part and reversed in part.

1. DIVORCE — CHILD CUSTODY — APPELLATE REVIEW — DE NOVO.

Review de novo by an appellate court of the ultimate custodial disposition in a child custody case is inappropriate; upon a finding of error, an appellate court should remand the case for reevaluation, unless the error was harmless; on remand, the trial court should consider up-to-date information as well as any other changes in circumstances arising since the original custody order (MCL 722.28; MSA 25.312[8]).

2. DIVORCE — CHILD CUSTODY — STANDARDS OF REVIEW.

Findings of fact in child custody cases are to be reviewed under the great weight of evidence standard, discretionary rulings are

to be reviewed for abuse of discretion, and questions of law for clear legal error (MCL 722.28; MSA 25.312[8]).

*Marilyn A. Knak* for the plaintiff.

*Henry E. Sarnacki* for the defendant.

Amici Curiae:

Women and the Law Clinic (by *Julie Kunce Field*) and Women Lawyers Association of Michigan (by *Elizabeth K. Bransdorfer*) in support of the defendant.

*Lynn Pargo* and *Michael Robbins* for the State Bar of Michigan, Family Law Council.

*Jerrold Schrotenboer* for Legal Services of Southeastern Michigan.

BRICKLEY, J. This is a child custody case in which the circuit court awarded the parties joint legal custody of their three minor children, with physical custody to the plaintiff father and liberal visitation to the defendant mother. The Court of Appeals reversed and awarded physical custody to the defendant. Because it did not correctly review this matter, we reverse the judgment of the Court of Appeals insofar as it relates to the standards of review applicable to child custody cases, and remand to circuit court for further proceedings.

## I. FACTS AND PROCEEDINGS

The parties were married in 1975 and have three children. The plaintiff filed for divorce in 1990. Following extended hearings incident to the divorce proceeding, a referee recommended that physical custody of the children be awarded to the defendant.

The referee reached this conclusion after reviewing the statutory factors for determining the best interests of the children. See MCL 722.23; MSA 25.312(3).[1] Although the referee found that most of the factors were of neutral weight, he did find that factors b and c weighed slightly in favor of the defendant and factor f weighed slightly in favor of the plaintiff. The referee also indicated that he considered what the children had told him during private and separate interviews.

At the request of the plaintiff, the circuit court held a de novo hearing. After hearing the testi-

---

[1] This case was considered below under the statutory factors provided in 1980 PA 434, MCL 722.23; MSA 25.312(3):

"Best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and continuation of the educating and raising of the child in its religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.

(k) Any other factor considered by the court to be relevant to a particular child custody dispute.

Although the statute was recently amended by 1993 PA 259, today's decision is not affected by those amendments.

mony of the parties, reviewing the evidentiary record made before the referee, and interviewing the two older children, the circuit court granted physical custody to the plaintiff. Although the circuit court judge found that most of the statutory factors were of neutral weight, he found that factors b, e, and f weighed slightly in favor of the plaintiff. The circuit court issued a December 6, 1991, custody order granting physical custody to the plaintiff and awarding the defendant liberal visitation rights, as well as joint legal custody.

The defendant appealed, and the Court of Appeals reversed the custody determination, concluding that the circuit court had made clearly erroneous findings of fact with regard to factor f and had committed clear legal errors concerning factors b, e, and f. 200 Mich App 505; 504 NW2d 684 (1993). Without discussing the remaining factors, the Court of Appeals further stated that upon de novo review it found the parties to be equal on all the statutory factors except factor i, which relates to the child's reasonable preference. On the basis of that factor, the Court of Appeals awarded custody to the defendant.

The plaintiff appealed to this Court.

## II. STANDARD OF REVIEW

We are asked to clarify the proper standard of review in child custody cases. We conclude that such cases are to be reviewed in accordance with § 8 of the Child Custody Act, which provides:

To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion

or a clear legal error on a major issue. [MCL
722.28; MSA 25.312(8).]

By its terms, § 8 distinguishes among three types
of findings and assigns standards of review to each.
Findings of fact are to be reviewed under the
"great weight" standard, discretionary rulings are
to be reviewed for "abuse of discretion," and ques-
tions of law for "clear legal error."

As noted by the Court of Appeals, the review
standards of the Child Custody Act differ from the
standards that this Court has applied in alimony
disputes and property disputes incident to divorce.
However, unlike the Court of Appeals, we do not
attempt to import or superimpose the standards
applicable to property and alimony disputes into
the legislatively prescribed standards applicable to
custody disputes. We believe that the difference in
standards comports with the fact that the interests
at stake in a child custody dispute differ from
those involved in a dispute over money or prop-
erty.

The three standards of review enumerated in § 8
of the custody act are part of the Legislature's
comprehensive effort to promote the best interests
and welfare of children. By incorporating stan-
dards of review into the act, the Legislature appar-
ently recognized that in custody cases the proceed-
ings themselves may jeopardize a child's welfare.
Because we believe that standards set forth in § 8
reasonably minimize the possibility of unwar-
ranted and disruptive changes in custody, while at
the same time enabling courts to pursue suitable
custody arrangements, we adopt those standards
as explained more fully herein.

A

The Child Custody Act provides that findings of

fact in child custody cases are reviewed under the "great weight of evidence" standard. MCL 722.28; MSA 25.312(8). When the Legislature enacted the custody act it presumably used the phrase, "against the great weight of evidence," with knowledge of its existing meaning and with intent that the phrase maintain its existing meaning. *In re Chamberlain Estate,* 298 Mich 278, 284; 299 NW 82 (1941). "Against the great weight of evidence" was defined by *Murchie v Standard Oil Co,* 355 Mich 550, 558; 94 NW2d 799 (1959). The Court explained that a reviewing court should not substitute its judgment on questions of fact unless they " 'clearly preponderate in the opposite direction.' " The court should review "the record in order to determine whether the verdict is so contrary to the great weight of the evidence as to disclose an unwarranted finding, or whether the verdict is so plainly a miscarriage of justice as to call for a new trial . . . ." *Id.*

Although the great weight standard traditionally is applied in the context of granting and denying new trials, the Legislature's adoption of that standard for appellate review of child custody orders reasonably furthers its express intent to: "expedite the resolution of a child custody dispute by prompt and *final* adjudication . . . ." MCL 722.28; MSA 25.312(8). In custody trials, the trial judge is the finder of fact. Thus, when an appellate court reviews a trial judge's findings, it acts as the functional equivalent of a trial judge reviewing the findings of a jury. Therefore, the great weight standard, which is the standard by which jury findings are reviewed, is also a logical standard by which to review findings of a trial judge. The great weight standard of review allows a meaningful yet deferential review by the Court of Appeals. A more deferential standard, such as "insufficient

evidence" or "supported by competent, material, and substantial evidence," could effectively immunize the trial judge's fact finding in contravention of a child's best interests.[2]

In the context of child custody cases, there are findings of ultimate facts, i.e., a finding regarding each factor, and there are findings of ordinary or evidentiary facts. The great weight of the evidence standard applies to all findings of fact. Thus, a trial court's findings on each factor should be affirmed unless the evidence " 'clearly preponderate[s] in the opposite direction.' " *Murchie, supra* at 558.

B

Under the Child Custody Act, discretionary rulings are reviewed under a "palpable abuse of discretion" standard. MCL 722.28; MSA 25.312(8). Abuse of discretion was defined in *Spalding v Spalding*, 355 Mich 382, 384-385; 94 NW2d 810 (1959), as follows:

> Where, as here, the exercise of discretion turns upon a factual determination made by the trier of the facts, an abuse of discretion involves far more than a difference in judicial opinion between the trial and appellate courts. . . . In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will

[2] In *Beason v Beason*, 435 Mich 791, 803; 460 NW2d 207 (1990), this Court held that factual findings in a *divorce* case are reviewed under a "clearly erroneous standard" and explained that a factual finding is clearly erroneous if the trial court's account of the evidence is implausible. Our disposition of this custody dispute does not require us to determine whether the "great weight standard" applicable to fact finding in custody cases is more or less deferential than the clearly erroneous standard applicable to divorce matters generally under *Beason*. The functional difference, if any, will be borne out best in practice.

but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.

Although defendant and amici curiae have suggested that this Court abandon the *Spalding* definition, at least in the context of custody disputes, the disposition of this case does not require such an outright rejection.[3] By using the word "palpable," the Legislature clearly contemplated a strict standard of review. Nevertheless, we do not agree with plaintiff that the Legislature's use of the word "palpable" should be construed as requiring an even stricter standard than *Spalding*—in essence, plaintiff proposes: palpability *plus Spalding.* A standard stricter than *Spalding,* as suggested by plaintiff, would effectively grant trial courts unfettered discretion over child custody matters and potentially jeopardize a child's best interests. Because we construe statutes in harmony with the spirit and intent of the act and in a manner that does not achieve absurd or unreasonable results, *In re State Hwy Comm,* 383 Mich 709, 714-715; 178 NW2d 923 (1970), we instead conclude that the Legislature's reference to "palpable," the same word this Court used in *Spalding,* manifests its intent to adopt a high standard of review not significantly unlike the *Spalding* standard.

To whom custody is granted is a discretionary dispositional ruling. *Cooley v Cooley,* 329 Mich 91, 95; 44 NW2d 884 (1950). Therefore, a custody award should be affirmed unless it represents an abuse of discretion. While the abuse of discretion

[3] The *Spalding* definition for abuse of discretion has been applied by this Court on various occasions. See *Dacon v Transue,* 441 Mich 315, 329; 490 NW2d 369 (1992); *Marrs v Bd of Medicine,* 422 Mich 688, 694; 375 NW2d 321 (1985); *Wendel v Swanberg,* 384 Mich 468, 475-476; 185 NW2d 348 (1971).

standard is strict, it does not afford trial courts unfettered discretion in awarding custody. The court's exercise of that discretion is already limited by the statutory best interest factors, MCL 722.23; MSA 25.312(3), each of which must be carefully evaluated by the trial judge. *Wolfe v Howatt*, 119 Mich App 109; 326 NW2d 442 (1982). Further, as noted above, a court's ultimate finding regarding a particular factor is a factual finding that can be set aside if it is against the great weight of the evidence. Therefore, a court's discretion in weighing the evidence regarding a particular factor is not unlimited; rather, it must be supported by the weight of the evidence.[4] See *Baker v Baker*, 411 Mich 567, 584-585; 309 NW2d 532 (1981).

C

Lastly, the custody act provides that questions of law are reviewed for "clear legal error." MCL 722.28; MSA 25.312(8). Because we are unable to discern any substantial distinction between "clear legal error" and ordinary "legal error" we regard the word "clear" as a legislative caution against result-oriented jurisprudence that might operate to the detriment of a child's interest in maintaining a stable custodial environment. When a court incorrectly chooses, interprets, or applies the law, it commits legal error that the appellate court is bound to correct.

---

[4] The already existing limits on judicial discretion in making custody awards distinguish child custody disputes from property disputes where the Court has adopted a less deferential standard of review for dispositional rulings. See *Sparks v Sparks*, 440 Mich 141, 151-152; 485 NW2d 893 (1992) (a dispositional ruling should be affirmed unless the appellate court is left with the firm conviction that the division was inequitable). In light of the significant differences between custody disputes and property disputes incident to divorce, we need not question *Sparks* or extend *Sparks* to custody cases.

D

To alleviate any confusion that prior decisions of this Court may well have engendered, we expressly recognize that the standards of review described in this section preclude de novo review of custody cases by appellate courts. In the context of appellate review, a truly de novo review would be a review of the record without deference to prior proceedings; on the basis of the record, the appellate court would make its own findings of fact and conclusions of law.[5] Although, courts have recited that review of custody cases is "de novo limited by the statute," they have not actually accorded a truly de novo review. See *Baker, supra.* Indeed, the extent to which the statutory standards "limit" de novo review is tantamount to abolishing de novo review. Today, we recognize as much by holding that review of custody orders is not de novo.

III

Having considered the proper standards of review in custody cases, we next turn to the Court of Appeals opinion. The Court held that the trial court committed clear legal error with regard to factors b, e, and f. As explained below, we agree with the Court of Appeals finding of legal error with respect to factors e and f, but we do not find error in the trial court's analysis of factor b. Further, in accord with *Dempsy v Dempsy,* 409 Mich 495; 296 NW2d 813 (1980), we hold that upon a finding of error, appellate courts should remand to the trial court unless the error was harmless.

[5] Powell & McAlpine, *Standards of review in Michigan,* 70 Mich B J 28, 29 (1991).

A

The Court of Appeals held that it was clear legal error for the trial judge to provide only a one-sided account of the facts when considering factor b. We disagree. While we believe that the most effective appellate review obviously would result from a more thorough account of the court's balancing, we disagree with the Court of Appeals finding of clear legal error on this issue. The trial court's findings in this case minimally satisfy the requirements of the court rules and case law.

MCR 2.517, which governs findings of fact by the trial court, provides in part:

> (A) Requirements.
> (1) In actions tried on the facts without a jury or with an advisory jury, the court shall find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment.
> (2) *Brief, definite,* and *pertinent* findings and conclusions on the contested matters are sufficient, *without over elaboration of detail or particularization of facts.* [Emphasis added.]

In the context of custody cases, this Court has refused to interpret this rule as requiring a recitation of all the evidence considered. In *Baker, supra* at 583, the Court explained:

> Neither the mandate of the Child Custody Act nor our requirement that in non-jury cases the "court shall find the facts specially and state separately its conclusions of law thereon" requires in cases involving child custody decisions that the court comment upon every matter in evidence or declare acceptance or rejection of every proposition argued.

The *Baker* Court explained that the trial court's

failure to address the myriad facts pertaining to a factor does not suggest that the relevant among them were overlooked. *Id.*

In the instant case, the factors not *discussed* by the trial court in ruling on factor b were: the defendant's involvement in the academic affairs and extracurricular activities of the children and the children's reliance on the defendant to answer questions about sexual maturation. The record does not suggest that those relevant facts were overlooked by the court. Instead, because the court only found "some" difference between the parents, rather than a "significant" or "substantial" difference, it would seem that the court did consider those facts.

Because the trial court complied with the court rules and case law, the "one-sided account" is not "clear legal error."

**B**

Factor e requires the trial court to consider "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes." MCL 722.23(e); MSA 25.312(3)(e). In the instant case, the trial court focused on the "*acceptability* of the custodial home," as opposed to its permanence. It stated its finding as follows:

> The Court is satisfied that either parent would provide permanence, as a family unit, and would offer acceptable custodial homes. It is undisputed that plaintiff as a father is accustomed to and willing to preform [sic] the day to day jobs to maintain a household. The Court feels that some weight should be assigned in favor of plaintiff because the evidence shows that defendant had been out of the home in the evening many times and thus not caring for the family while plaintiff has been present on those occasions.

Because acceptability of the home is not pertinent to factor e, the panel found that it was legal error for the trial court to consider it. We agree with the Court of Appeals. The facts relied upon and expressed by the judge relate to acceptability, rather than permanence, of the custodial unit. Therefore, the trial court's error seems to go beyond mere word choice.

C

Standing alone, the trial court's error on factor e might be deemed harmless; however, we also agree with the Court of Appeals that there was legal error in the trial court's evaluation of factor f, which requires the court to consider the parties' "moral fitness." MCL 722.23; MSA 25.312(3). The trial court found this factor favored the plaintiff and supported its conclusion with the fact that the defendant had engaged in extramarital affairs. It stated:

> The Court is of the opinion that the moral fitness factor favors plaintiff under the circumstances. Defendant does not dispute that she engaged in extra-marital affairs during the past few years. The Court is of the opinion that this demonstrates a poor moral example for the children and thus finds this factor in favor of plaintiff.

In finding that the trial court committed clear legal error in its analysis of factor f, the Court of Appeals explained:

> Although the record reveals that defendant did not admit that she had engaged in extramarital affairs, defendant apparently admitted one affair during the friend of the court hearings and there was some evidence of another. Even assuming that

there was evidence supporting the existence of two extramarital affairs, the evidence was clear that the children had no knowledge of them. Given that the children had no knowledge of defendant's affairs, there was no reason for finding that defendant's affairs established a poor moral example for the children. Under the circumstances, the affairs could establish a poor moral example only if the children knew about them. Because there were no findings of fact demonstrating a poor moral example for the children, there was no reason for finding this factor in favor of plaintiff.

Moreover, the trial court's conclusion that defendant's affairs demonstrated a poor moral example for the children evinced a clear legal error on a major issue. In *Truitt* [*v Truitt*, 172 Mich App 38, 46; 431 NW2d 454 (1988)], this Court stated that "[s]tanding alone, unmarried cohabitation is not enough to constitute immorality under the Child Custody Act." Previously, a panel of this Court also observed that a *mother's acts of adultery do not necessarily preclude her from having custody of her children. Williamson v Williamson,* 122 Mich App 667, 673; 333 NW2d 6 (1982). Even if defendant engaged in extramarital affairs, this finding, standing alone, is not sufficient to support the trial court's conclusion that defendant behaved immorally. This finding is a clear legal error that requires reversal. [200 Mich App 514-515.]

Thus, the Court of Appeals concluded that extramarital conduct of the plaintiff, which was unknown to the children, did not, as a matter of law, bear on the defendant's moral fitness. While, for reasons explained below, we agree with the Court of Appeals, we also note that by focusing exclusively on the parent's "moral example" the Court of Appeals, like the trial court, overlooked the critical words in factor f: "fitness of the parties involved."

Factor f (moral fitness), like all the other statu-

tory factors, relates to a person's fitness *as a parent.* To evaluate parental fitness, courts must look to the parent-child relationship and the effect that the conduct at issue will have on that relationship. Thus, the question under factor f is *not* "who is the morally superior adult"; the question concerns the parties' relative fitness to provide for their child, given the moral disposition of each party as demonstrated by individual conduct. We hold that in making that finding, questionable conduct is relevant to factor f only if it is a type of conduct that necessarily has a significant influence on how one will function *as a parent.*[6]

Extramarital relations are not necessarily a reliable indicator of how one will function within the parent-child relationship.[7] While such conduct certainly has a bearing on one's spousal fitness, it need not be probative of how one will interact with or raise a child. Because of its limited probative value and the significant potential for prejudicially ascribing disproportionate weight to that fact, extramarital conduct, in and of itself, may not be relevant to factor f. To the extent that one's marital misconduct actually does have an identifiable adverse effect on a particular person's ability or disposition to raise a child, those parental shortcomings often may be reflected in other relevant statutory factors.

Unfortunately, extramarital relations are not

---

[6] While we do not venture to promulgate standards of moral conduct, Kirkendall, *Best interest of the minor child,* 21 Mich Fam L J 15 (Oct, 1994), provides a list of conduct that, although not exhaustive, represents the type of morally questionable conduct relevant to one's moral fitness as a parent. It includes: verbal abuse, drinking problems, driving record, physical or sexual abuse of children, and other illegal or offensive behaviors. While the list also includes consideration of "extra-marital conduct known by the children," we believe that today's decision sufficiently addresses the relevance of that fact.

[7] See Campbell, *Child custody evaluations and appropriate standards of psychological practice,* 71 Mich B J 278, 278-280 (1992).

uncommon incidents in divorces. Indeed, they are often the impetus for a marital breakdown. We do not take lightly the moral or destructive consequences of extramarital conduct on a marriage. Nonetheless, to punish infidelity at the risk of jeopardizing a child's best interests simply contravenes the overriding purpose of the Child Custody Act. Accordingly, we agree with the Court of Appeals to the extent that it found that the trial court committed legal error when considering the extramarital conduct under factor f.[8]

IV

Finally, we address the proper disposition of custody cases following appellate review. In its strained effort to reconcile de novo review with the otherwise deferential standards of review in custody cases, the Court of Appeals concluded that upon finding error, it was required to engage in a de novo review to determine the proper custody arrangement.

> [W]e conclude that this Court may review de novo the dispositional ruling of a trial court, but only after we have concluded, as we do here, that the trial court has either made findings of fact against the great weight of the evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. In this case, the trial court committed the first and third of these prohibitions and we are, therefore, free to review de novo the custody issue. [200 Mich App 522.][9]

[8] We do not, however, subscribe to the Court of Appeals, "what a child doesn't know won't hurt him" approach to evaluating the custody factors.

[9] The Court's conclusion represents the culmination of its effort to reconcile *Beason* and *Sparks, supra,* with the Child Custody Act; the Court explained: "at various times we have been instructed by the Legislature or the Supreme Court to apply simultaneously every

We decline to adopt the dispositional framework offered by the Court of Appeals. De novo review of the ultimate custodial disposition is inappropriate.

In accord with *Dempsy, supra,* upon a finding of error an appellate court should remand the case for reevaluation, unless the error was harmless. We further hold that on remand, the court should consider up-to-date information, including the children's current and reasonable preferences, as well as the fact that the children have been living with the plaintiff during the appeal and any other changes in circumstances arising since the trial court's original custody order.[10]

We are aware that an appellate court's peremptory change of custody would be more expeditious than remanding to the trial court. However, we do not believe that the Legislature's express intent to expedite proceedings was to take precedence over the primary goal of the Child Custody Act, which is to secure custody decisions that are in the best interests of the child. The state's interest in child protection cannot be reduced merely to providing expedient proceedings. As amici curiae have pointed out: "It is a false efficiency to put 'expediency' over accuracy."[11]

Our disposition of this case recognizes that trial courts are in a superior position to make accurate decisions concerning the custody arrangement that

standard of review known to the law. We will do the best we can." 200 Mich App 512. By declining to incorporate *Beason* and *Sparks* into the Child Custody Act, this Court believes that today's decision is "the best we can do" to alleviate the confusion expressed by the Court of Appeals.

[10] We do not suggest that the events which have taken place during the appellate process give rise to an "established custodial environment" that, pursuant to MCL 722.27(1)(c); MSA 25.312(7)(1)(c), alters the burden of proof in favor of the party who has enjoyed custody during the appeal.

[11] Women and the Law Clinic and Women Lawyers Association of Michigan.

will be in a child's best interests. Although not infallible, trial courts are more experienced and better situated to weigh evidence and assess credibility. Trial courts not only hear testimony and observe witnesses, but also may elicit testimony, interview children, and invoke other judicial resources to assure a thorough and careful evaluation of the child's best interests.

### V. CONCLUSION

For the reasons set forth herein, we reverse that portion of the Court of Appeals decision that posits a standard of review different than that prescribed in § 8 of the Child Custody Act. Further, we reverse the Court of Appeals decision with respect to factor b, affirm its decision with respect to factors e and f, and remand to the trial court for reevaluation of its custody award and further disposition consistent with this opinion.

CAVANAGH, C.J., and BOYLE, J., concurred with BRICKLEY, J.

MALLETT, J. I concur in the opinion of Justice BRICKLEY except with respect to the standard of review.

LEVIN, J. (*separate opinion*). The majority holds that the proper standard of appellate review in child custody cases is set forth in § 8 of the Child Custody Act of 1970,[1] and that, in accordance with

---

[1] Section 8 of the Child Custody Act of 1970 provides:

   To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. [MCL 722.28; MSA 25.312(8).]

§ 8, "[f]indings of fact are to be reviewed under the 'great weight' standard, discretionary rulings are to be reviewed for 'abuse of discretion,' and questions of law for 'clear legal error.' "[2]

The majority concludes that the standards of review described in the lead opinion preclude de novo review of custody cases by appellate courts,[3] and that a finding of fact is contrary to the great weight of the evidence if the evidence " 'clearly preponderate[s] in the opposite direction.' "[4] The lead opinion continues that discretionary rulings, including the decision to whom custody should be awarded, is to be reviewed under the *Spalding* abuse of discretion standard requiring the appellant to show that the custody decision must be so "palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but

---

[2] *Ante,* p 877.

[3] *Ante,* p 882.

[4] *Ante,* p 879.

The lead opinion states that in *Beason v Beason,* 435 Mich 791, 803; 460 NW2d 207 (1990), this Court "explained that a factual finding is clearly erroneous if the trial court's account of the evidence is implausible." *Ante,* p 879, n 2.

The lead opinion states that its disposition of the instant case "does not require us to determine whether the 'great weight standard' applicable to fact finding in custody cases is more or less deferential than the clearly erroneous standard applicable to divorce matters generally under *Beason.* The functional difference, if any, will be borne out best in practice." *Id.*

The lead opinion nevertheless states that "a trial court's findings on each ['best interests of the child'] factor [MCL 722.23; MSA 25.312(3)] should be affirmed unless the evidence 'clearly preponderate[s] in the opposite direction,' " referencing (*ante,* p 879). *Murchie v Standard Oil Co,* 355 Mich 550, 558; 94 NW2d 799 (1959), in which this Court stated that where it is claimed that a new trial should be granted because the verdict was against the great weight of the evidence this Court examines the record "to determine whether the verdict is so contrary to the great weight of the evidence as to disclose an unwarranted finding, or whether the verdict is so plainly a miscarriage of justice as to call for a new trial," and that a new trial is granted only when "we conclude from a review of the evidence that the verdict is manifestly against the clear weight of the evidence."

defiance thereof, not the exercise of reason but rather of passion or bias."[5]

I agree with the majority that an appellate court should not review child custody cases de novo.

I write separately because this Court, not the Legislature, is charged by the constitution with determining the scope of judicial review, and because the legislatively prescribed standard for appellate review set forth in § 8 of the Child Custody Act, construed as requiring an appellate court to defer to the trial court's exercise of discretion, provides inadequate appellate review, and should not be adopted by this Court.

I

The constitution provides that "[t]he judicial power of the state is vested exclusively in one court of justice which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court,"[6] and that "[t]he supreme court shall by general rules establish, modify, amend and simplify the practice and procedure in all courts of this state."

---

[5] *Ante,* pp 879-880.

The lead opinion states that under § 8 "discretionary rulings are reviewed under a 'palpable abuse of discretion' standard," and that "abuse of discretion was defined in *Spalding v Spalding,* 355 Mich 382, 384-385; 94 NW2d 810 (1959)." *Ante,* p 879.

The lead opinion states that the decision to whom custody should be awarded is a discretionary-dispositional ruling that should be affirmed unless it represents an abuse of discretion. The lead opinion continues that "[w]hile the abuse of discretion standard is strict, it does not afford trial courts unfettered discretion in awarding custody" because the exercise of that discretion is limited by the best-interests-of-the-child factors (see n 15), and "a court's ultimate finding regarding a particular factor is a factual finding that can be set aside if it is against the great weight of the evidence." *Ante,* pp 880-881.

I observed in *People v Talley,* 410 Mich 378, 398; 301 NW2d 809 (1981) (LEVIN, J., concurring), that the *Spalding* standard appears to be of "apparently insurmountable height."

[6] Const 1963, art 6, § 1.

The constitution further provides that the supreme court shall have "appellate jurisdiction as provided by rules of the supreme court,'"[7] and that, while "[t]he jurisdiction of the court of appeals shall be provided by law," "the practice and procedure therein shall be prescribed by rules of the supreme court."[8]

It is thus clear that while the Legislature may provide concerning the *jurisdiction* of the Court of Appeals, the *practice and procedure* in the Court of Appeals, as with practice and procedure in all courts in this state, shall be prescribed by this Court.

It is for this Court ultimately to decide the scope of appellate review. Just as the Legislature could not establish for a tort or contract action a standard of appellate review as deferential as that prescribed for administrative action, such as "competent, material and substantial evidence on the whole record," or, in the case of worker's compensation proceedings, "any evidence,"[9] so too it cannot impose on parents, children, and family law, unless this Court acquiesces, a "great weight of evidence" standard or a "palpable abuse of discretion" standard as set forth in § 8 of the Child Custody Act.

II

This Court, in the exercise of the power to prescribe practice and procedure, adopted a court rule concerning the scope of appellate review of trial court findings of fact. The court rule provides that in actions tried on the facts without a jury the Court shall find the facts, which shall not be

[7] Const 1963, art 6, § 4.
[8] Const 1963, art 6, § 10.
[9] Const 1963, art 6, § 28.

set aside on appellate review unless clearly erroneous.[10]

In *Tuttle v Dep't of State Hwys,* 397 Mich 44, 46; 243 NW2d 244 (1976), this Court adopted the construction placed by the United States Supreme Court on comparable "clearly erroneous" language in Rule 52(a) of the Federal Rules of Civil Procedure. The United States Supreme Court had stated that " '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *United States v United States Gypsum Co,* 333 US 364, 395; 68 S Ct 525; 92 L Ed 746 (1948).

In *Beason v Beason,* 435 Mich 791, 801; 460 NW2d 207 (1990), concerning an alimony award, this Court recognized that the court rules construed in *Tuttle* "do not distinguish between law and equity cases," and stated that "we recognize today that the definition of clearly erroneous which we adopted in *Tuttle* does not contemplate a review de novo" where the issue concerns an award of alimony.[11]

---

[10] The court rule provides that, on appellate review, "[f]indings of fact by the trial court may not be set aside unless clearly erroneous," and that "regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses . . . ." MCR 2.613(C).

[11] *Beason, supra,* p 802.

In *Beason, supra,* pp 803-805, this Court added:

In *Anderson v Bessemer City,* 470 US 564, 573-574; 105 S Ct 1504; 84 L Ed 2d 518 (1985), the United States Supreme Court emphasized the deference which is due a trial court's factual determination in a review for clear error under FR Civ P 52(a):

"This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its ·duty under Rule 52(a) if it undertakes to duplicate the role of the lower court. . . . If the district court's account of the evidence is

*Beason* was followed by *Sparks v Sparks,* 440 Mich 141, 151-152; 485 NW2d 893 (1992), a divorce action in which the issue concerned the division of property, and the Court said:

To alleviate any possible confusion stemming from our prior cases, we hold here that the appellate standard of review of dispositional rulings is not limited to clear error or to abuse of discretion.

plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."

Thus, if the trial court's account of the evidence is plausible in light of the record viewed in its entirety, the Court of Appeals may not reverse. However,

"This is not to suggest that the trial judge may insulate his findings from review by denominating them credibility determinations, for factors other than demeanor and inflection go into the decision whether or not to believe a witness. Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it. Where such factors are present, the court of appeals may well find clear error even in a finding purportedly based on a credibility determination." [*Anderson, supra* at 575.]

\*    \*    \*

Where a finding is derived from an erroneous application of law to facts, the appellate court is not limited to review for clear error. Nor is an appellate court so limited where the trial judge's factual findings may have been influenced by an incorrect view of the law. *Pavlides v Galveston Yacht Basin, Inc,* 727 F2d 330, 339, n 16 (CA 5, 1984); *Weissmann v Freeman,* 868 F2d 1313, 1317 (CA 2, 1989), cert den 493 US [883] (1989). *Chaparral Resources, Inc v Monsanto Co,* 849 F2d 1286, 1289 (CA 10, 1988).

In summary, we hold that the factual findings of a trial court in a divorce case are to be reviewed for clear error. A finding is clearly erroneous if the appellate court, on all the evidence, is left with a definite and firm conviction that a mistake has been committed. While this standard gives the appellate judge more latitude than when reviewing a trial by jury, it does not authorize a reviewing court to substitute its judgment for that of the trial court; if the trial court's view of the evidence is plausible, the reviewing court may not reverse.

The appellate court must first review the trial court's findings of fact under the clearly erroneous standard. If the findings of fact are upheld, the appellate court must decide whether the dispositive ruling was *fair and equitable* in light of those facts. But because we recognize that the dispositional ruling is an exercise of discretion and that appellate courts are often reluctant to reverse such rulings, we hold that the ruling should be affirmed unless the appellate court is left with the firm conviction that the division was *inequitable.* [Emphasis added.]

III

In the instant case, the Court of Appeals, after reviewing our efforts in *Beason* and *Sparks,* said that it found itself nevertheless confused.[12]

The lead opinion acknowledges that in *Sparks* this Court adopted a less deferential standard of review for dispositional rulings concerning the division of property when this Court said that a

---

[12] 200 Mich App 505, 521; 504 NW2d 684 (1993). The lead opinion states:

By declining to incorporate *Beason* and *Sparks* into the Child Custody Act, this Court believes that today's decision is "the best we can do" to alleviate the confusion expressed by the Court of Appeals. [*Ante,* p 889, n 9.]

The Court referred to the appellate review standard set forth in § 8 of the Child Custody Act, and concluded, after review of recent decisions of that Court, that it "may review de novo the dispositional ruling of a trial court, but only after we have concluded, as we do here, that the trial court has either made findings of fact against the great weight of the evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. In this case, the trial court committed the first and third of these prohibitions and we are, therefore, free to review de novo the custody issue." 200 Mich App 522.

While the Court said that in such a case it "may change the dispositional ruling ourselves without a remand," it did not do so and rather "[r]eversed and remanded for further proceedings consistent with" its opinion, and did not retain jurisdiction. *Id.* at 521-522.

property dispositional ruling should be affirmed
unless the appellate court is left with the firm
conviction that the division was inequitable. The
lead opinion states that because of the difference
between custody and property disputes, "we need
not question *Sparks* or extend *Sparks* to custody
cases."[13]

The court rule obliges the trial court, in an
action tried on the facts without a jury, to state
the facts and, separately, its conclusions of law
"and direct entry of the appropriate judgment."[14]

The "appropriate judgment" is characterized in
*Sparks* and by the lead opinion as a "dispositional
ruling" that is to be reviewed on appeal, under
*Sparks,* to determine whether a property division
is "inequitable" in light of the facts.

In the instant case, the majority in effect directs
that a dispositional ruling concerning child cus-
tody should be reviewed by the Court of Appeals to
determine only whether there was an abuse of
discretion, unless the evidence respecting one or
more of the legislatively prescribed best-interests-
of-the-child factors[15] "clearly preponderate[s]"
against a trial court finding.

---

[13] *Ante,* p 881, n 4.

[14] The court rule provides that in "actions tried on the facts without
a jury," the court "shall find the facts specially, state separately its
conclusions of law, and direct entry of the appropriate judgment."
MCR 2.517(A)(1).

[15] Section 3 of the Child Custody Act as amended by 1993 PA 259
provides:

As used in this act, "best interests of the child" means the
sum total of the following factors to be considered, evaluated,
and determined by the court:
(a) The love, affection, and other emotional ties existing
between the parties involved and the child.
(b) The capacity and disposition of the parties involved to
give the child love, affection, and guidance and to continue the
education and raising of the child in his or her religion or
creed, if any.
(c) The capacity and disposition of the parties involved to

IV

I question the wisdom of appearing to provide less review of a trial judge's "discretionary" dispositional decision concerning child custody than is provided respecting a trial judge's discretionary dispositional decision awarding alimony or dividing property.

The lead opinion states that "trial courts are more experienced and better situated to weigh evidence and assess credibility,"[16] and "hear testimony and observe witnesses."[17] But that can also

provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23; MSA 25.312(3).]

[16] *Ante,* p 890.

The lead opinion also points out that the trial court may interview children, and invoke other judicial resources, to assure a thorough and careful evaluation of the child's best interests.

The practice is indeed to allow the circuit judge to interview children, and for appellate judges not to do so.

I see no reason why an appellate court could not "invoke" or cause to be invoked "other judicial resources to assure a thorough and careful evaluation of a child's best interests." *Id.*

[17] *Id.*

be said of almost any civil case in which the judge sits as trier of fact.

I am inclined to the view that there is sufficient flexibility in the clearly erroneous standard, and in the mandate that the trial court shall, after finding the facts, enter an "appropriate" judgment, that it is unwise to continue to proliferate reviewing standards for actions tried to the court.

This Court observed in *Schneider v Pomerville,* 348 Mich 49, 54; 81 NW2d 405 (1957), that "the judicial sieve" on appellate review should be of "finer mesh" when the appellate court is reviewing a judge's findings of fact rather than a jury's findings of fact because, although the judge may be learned in the law, a finding of fact by a jury is "more apt to be *sound* than that of one man." (Emphasis added.) This language was quoted with apparent approval in *Tuttle.*

There is as much need for appellate review of a trial judge decision awarding the custody of a child or children as there is of a decision awarding alimony or dividing property, or a bench decision awarding or declining to award damages for breach of contract or tortious injury.

I would not defer, even on an experimental basis, to the legislatively prescribed child custody appellate review standard, "great weight of evidence" and "palpable abuse of discretion," construed as insulating from appellate review such decisions unless the evidence preponderates against a finding on one of the best-interests-of-the-child factors or there was an abuse of discretion as defined in *Spalding.*

V

I agree with the observations of the lead opinion in part III except that I would be inclined to allow

the Court of Appeals considerable leeway in deciding whether to remand for more specific fact finding, and I would not suggest that remand for reevaluation of a custody award is necessarily the correct disposition unless the error perceived by the Court of Appeals is seen as harmless.

MALLETT, J., concurred with LEVIN, J.

GRIFFIN, J. (*concurring in part and dissenting in part*). Although I agree with the bulk of the lead opinion, I write separately to express my disagreement with its conclusion that extramarital conduct may not be probative of moral fitness under the Child Custody Act.[1]

The child custody statute endeavors to gauge parental fitness through consideration of ten specific factors, all of which must be considered.[2] *Collectively,* they determine "parental fitness." Factor f requires lower courts to consider "the moral fitness of the parties involved." Despite this affirmative command, the lead opinion today concludes:

> We hold that in making that finding, questionable conduct is relevant to factor f only if it is a type of conduct that necessarily has a significant influence on how one will function *as a parent.*
>
> Extramarital relations are not necessarily a reliable indicator of how one will function within the parent-child relationship. While such conduct certainly has a bearing on one's spousal fitness, it need not be probative of how one will interact with or raise a child. Because of its limited probative value and the significant potential for prejudicially ascribing disproportionate weight to that

---

[1] MCL 722.23; MSA 25.312(3).

[2] *Bowers v Bowers,* 198 Mich App 320, 328; 497 NW2d 602 (1993).

fact, extramarital conduct, in and of itself, may not be relevant to factor f.[3]

The holding of the lead opinion with respect to factor f amounts to a usurpation of legislative authority. Inclusion of factor f in the Child Custody Act reflects a decision by the Legislature that *moral* fitness *is* relevant to the "best interests of the child" determination. Since extramarital conduct is probative of moral fitness, such conduct merits consideration in custody decisions.

While the statute divides parental fitness into various aspects, there is no similar subdivision of moral fitness into what is relevant to parental fitness and what is not. All actions bearing on one's moral fitness necessarily become relevant to one's parental fitness by virtue of factor f. While disagreement may exist over the nexus between moral fitness and parental fitness,[4] arguments of this type are more appropriately addressed to the Legislature.

I do not suggest that extramarital conduct should be dispositive. As expressed by the Court of Appeals in *Feldman v Feldman,* 55 Mich App 147, 151; 222 NW2d 2 (1974):

> [M]oral fitness of the competing parties is only one of ten factors which the court considers in child custody disputes. It is important to place the highly prejudicial evidence against plaintiff in the proper perspective.[5]

Extramarital conduct should be considered and evaluated in a fair and judicious manner.

---

[3] *Ante* at 887.

[4] See Campbell, *Child custody evaluations and appropriate standards of psychological practice,* 71 Mich B J 278, 278-280 (1992).

[5] See also *Zawisa v Zawisa,* 61 Mich App 1; 232 NW2d 275 (1975).

Accordingly, I would reverse the decision of the Court of Appeals with respect to factor f.

RILEY, J., concurred with GRIFFIN, J.