# STATE OF MICHIGAN

# COURT OF APPEALS

---

MEAGAN RACHEL EMMONS, formerly known
as MEAGAN RACHEL VANCOURT,

      Plaintiff-Appellant,

v

JUSTIN ALLEN VANCOURT,

      Defendant-Appellee.

UNPUBLISHED
May 4, 2017

No. 335703
Clinton Circuit Court
LC No. 12-023474-DM

---

Before: O'BRIEN, P.J., and SERVITTO and STEPHENS, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order modifying the parties' 2012 judgment of divorce regarding the parenting-time schedule. For the reasons stated in this opinion, we vacate and remand.

## I. BACKGROUND

On September 10, 2012, a consent judgment of divorce was entered, which provided that the parties have joint legal and physical custody of their then one-year-old daughter, TFV. The judgment provided that defendant would have parenting time for three hours in the evening on Tuesdays and Thursdays, and on alternating weekends from 8:00 a.m. on Saturday until 6:00 p.m. on Sunday. On August 22, 2016, defendant moved to modify parenting time. Plaintiff argued that the motion was, in fact a motion for change of custody, not a request to modify parenting time, and that since there was no change of circumstances, it should be denied.

At a hearing on the motion, it was established that the parties verbally agreed in 2014 to a modified schedule. They agreed that defendant would have parenting time on Wednesday from 4:00 p.m. until Thursday at 7:00 a.m. when TFV went to daycare and that defendant's alternating weekend parenting-time schedule would begin at 4:00 p.m. on Fridays. According to defendant, the change occurred because both parents felt that TFV was having a hard time going back to plaintiff's home so soon after getting to defendant's home. Plaintiff testified that she agreed to change the schedule because TFV was very attached to defendant's former girlfriend, Courtney, and the change would allow them more time to play together. Defendant acknowledged that TFV really appreciated and loved Courtney, whom he dated for two years. After they broke up,

-1-

defendant requested that plaintiff not let TFV see Courtney any longer. However, plaintiff continued to allow TFV to have contact with her.

Defendant testified that he worked 8 to 10 hours, from 5:00 or 6:00 a.m. until 2:30 or 3:30 p.m., Monday through Friday. He explained that his home was five minutes away from plaintiff's home and five minutes from his daughter's elementary school, which she began to attend two weeks before the hearing. Both he and plaintiff used the same daycare facility. Defendant testified that when he has parenting time, his live-in girlfriend transported TFV to the daycare facility in the mornings. He claimed that his girlfriend had a very loving and supportive relationship with TFV. Defendant further claimed that the only time that TFV did not want to come to defendant's home was when he had to pick her up directly from plaintiff's care. He stated that plaintiff would exude a negative attitude, reassuring TFV that she only had to stay with defendant for one night. Plaintiff stated that she was only comforting TFV when she did not want to go to her father's home, and that she encouraged her to go and have fun.

Plaintiff testified that defendant had never taken TFV to a medical appointment. Defendant testified that plaintiff scheduled the appointments during her parenting time. Defendant acknowledged that he used profanity in text messages to plaintiff, but denied using profanity in his household. Defendant also acknowledged that he was convicted in 2009 of "lewd and lascivious" behavior and was placed on probation, which he successfully completed.

Defendant thought it was in TFV's best interests to have equal time in two stable households. Plaintiff thought it important for TFV to have a strong relationship with her father, but believed the existing schedule was appropriate. She did not believe that defendant should get more parenting time until he became more involved in TFV's life.

The trial court found that TFV had an established custodial environment with both parties, noting that she was getting her material needs, guidance, discipline, and parental comfort from both parents. The court then stated that defendant was seeking to change the frequency and duration of parenting time, not the established custodial environment. The court found the following change of circumstances supported modification of the parenting time order:

1) TFV was only one year old and breastfeeding when the consent judgment of divorce was entered;

2) TFV could now walk and talk;

3) TFV was just starting kindergarten; and

4) Defendant had been trying to increase his parenting time consistently since 2014.

The court then applied the best interest factors, finding nearly all factors equal. It did however, find that the capacity and disposition of the parties to give guidance to the child slightly favored defendant because the court was concerned with plaintiff continuing to facilitate contact with defendant's former girlfriend. The court also found that the "willingness and ability to facilitate and encourage a close and continuing parental relationship" factor favored defendant. The court was concerned with plaintiff's comments to TFV before she was to spend time with defendant. The court also noted plaintiff's unwillingness to consider more parenting

time for defendant. Finally, the court again noted that, at the time of the initial judgment, TFV was nursing, and highlighted defendant's willingness to take less parenting time then with the expectation that he would be afforded more parenting time as the child got older.

## II. STANDARD OF REVIEW

This Court must affirm all custody orders unless the trial court's factual findings, including findings on the established custodial environment and the child custody factors, are against the great weight of evidence, or the court's discretionary decisions, including its custody determination, amounts to a palpable abuse of discretion, or the court commits a clear legal error on a major issue. MCL 722.28; *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009), quoting *Phillips v Jordan*, 241 Mich App 17, 20; 614 NW2d 183 (2000) (citations omitted). Under the great weight standard, a trial court's findings "should be affirmed unless the evidence 'clearly preponderates in the opposite direction.' " *Fletcher v Fletcher*, 447 Mich 871, 879; 526 NW2d 889 (1994), quoting *Murchie v Standard Oil Co*, 355 Mich 550, 558; 94 NW2d 799 (1959). Additionally, this Court should not interfere with a trial court's credibility determinations. *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011). With respect to custody and other discretionary dispositional rulings, *Fletcher*, 447 Mich at 880, an abuse of discretion exists when the result is "so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *Id.* at 879-880. Clear legal error occurs "when the trial court errs in its choice, interpretation, or application of the existing law." *Shulick v Richards*, 273 Mich App 320, 323; 729 NW2d 533 (2006).

## III. ANALYSIS

"The term '[c]hild-custody determination' means a judgment, decree, or other court order providing for legal custody, physical custody, or parenting time with respect to a child. Child-custody determination includes a permanent, temporary, initial, and modification order...." *Shade v Wright*, 291 Mich App 17, 22; 805 NW2d 1 (2010) quoting MCL 722.1102(c). A court may modify a custody order if there is proper cause or a change of circumstances indicating that modifying the order is in the child's best interests. MCL 722.27(1)(c). Proper cause exists if there are "appropriate grounds that have or could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken." *Vodvarka v Grasmeyer*, 259 Mich App 499, 511; 675 NW2d 847 (2003). A change of circumstances warranting a custody change exists if, "since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed." *Id.* at 513.

"The framework for evaluating 'proper cause' or 'change of circumstances' when a party requests to modify a parenting time order depends on whether an established custodial environment is affected and the type of modification requested." 1 Kelly, Curtis & Roane, Michigan Family Law (7th ed) (ICLE, 2011), § 12.33, p 679.

> [T]he rationale for imposing more stringent constructions on the terms "proper cause" and "change of circumstances" with respect to custody determinations is

far less applicable with respect to parenting time determinations. With respect to child custody disputes, "[t]he goal of MCL 722.27 is to minimize unwarranted and disruptive changes of custody orders, except under the most compelling circumstances." *Corporan v Henton*, 282 Mich App 599, 603, 766 NW2d 903 (2009). "Providing a stable environment for children that is free of unwarranted custody changes . . . is a paramount purpose of the Child Custody Act . . . ." *Vodvarka*, 259 Mich App at 511. Therefore, in the context of a child custody dispute, the purpose of the proper cause or change of circumstances requirement is "to 'erect a barrier against removal of a child from an established custodial environment and to minimize unwarranted and disruptive changes of custody orders.' " *Id*. at 509, quoting *Heid v AAASulewski (After Remand)*, 209 Mich App 587, 593-594, 532 NW2d 205 (1995).

Such concerns do not exist, however, when a modification of parenting time does not alter the established custodial environment because determinations regarding child custody and parenting time serve different purposes. Whereas the primary concern in child custody determinations is the stability of the child's environment and avoidance of unwarranted and disruptive custody changes, the focus of parenting time is to foster a strong relationship between the child and the child's parents. See MCL 722.27a. [*Id*. at 28-29.]

While declining to define the proper cause or chance of circumstances necessary to change parenting time, the Court stated that normal life changes should be considered. *Id.* at 30. As it related to the child in *Shade*, beginning high school and seeking to become more involved in social and extracurricular activities constituted a change of circumstances sufficient to modify parenting time. *Id.* at 30-31.

"If a change in parenting time results in a change in the established custodial environment, then the *Vodvarka* framework is appropriate." *Shade*, 291 Mich App at 27. Thus, which kind of proper cause and change of circumstances applies in this case turns on whether the trial court's order altered the child's established custodial environment. An established custodial environment can exist in more than one home. *Rittershaus v Rittershaus*, 273 Mich App 462, 471; 730 NW2d 262 (2007). An established custodial environment is

a custodial relationship of a significant duration in which [the child is] provided the parental care, discipline, love, guidance and attention appropriate to his age and individual needs; an environment in both the physical and psychological sense in which the relationship between the custodian and the child is marked by qualities of security, stability and permanence. [*Baker*, 411 Mich at 579-580.]

An established custodial environment exists if

over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered. [MCL 722.27(1)(c).]

-4-

Whether a custody order exists or which party has previously been granted custody is irrelevant to determining whether there is an established custodial environment. *Hayes v Hayes*, 209 Mich App 385, 388; 532 NW2d 190 (1995). "When a modification would change the established custodial environment of a child, the moving party must show by clear and convincing evidence that it is in the child's best interest." *Shade*, 291 Mich App at 23.

The trial court determined that the child had an established custodial environment with both parents. The parties had agreed to alter the original custody arrangement, such that defendant's two evening sessions were combined into one overnight and his alternating weekend visitations included Friday evening. Both felt that this was in TFV's best interests because she did not like leaving her father's care so quickly during the evening sessions. Defendant testified that when the child was in his care, she would come to him for guidance and parental comfort. Defendant was employed, enabling him to provide basic necessities for the child. Moreover, the parties lived in close proximity to one another as well as TFV's school and daycare facility, making her day-to-day schedule similar in each household. Given this evidence, it appears that each parent provided a secure, stable, and permanent environment for TFV. Since the evidence did not "clearly preponderate" in favor of an alternative conclusion, *Fletcher*, 447 Mich at 879, the determination that an established custodial environment existed with both parents was not against the great weight of the evidence, MCL 722.28.

The trial court's order modifying parenting time significantly changed the amount of time TFV spent with each parent. The parties' agreed-to-modification of parenting time in 2014 left plaintiff with 265 overnights and defendant with 100 overnights. The January 2017 child support order that followed the court's modification of parenting time indicated plaintiff and defendant had an equal number of 182.5 overnights. In this case, even where the parties shared joint physical custody, a reduction from 265 overnights to 182.5 overnights would likely affect the custodial environment of plaintiff. That is a loss of 82.5 days or approximately 11 weeks of parenting time. In *Lieberman v Orr*, ___ Mich App ___, ___; ___NW2d ___ (2017) slip op at 10 n 8, the Court reasoned that "In no world can a change from 225 overnights to 140 overnights be considered simply a change of parenting time and not a change in physical custody where the parties do not share joint physical custody. And if they do share joint physical custody, a reduction from 225 overnights to 140 overnights (85 days), would likely affect the established custodial environment[.]" Even in a case where the parties have joint physical custody and there is an established custodial environment with both parents, changes that "substantially reduce the time a parent spends with a child, [] would potentially cause a change in the established custodial environment." *Rains v Rains*, 301 Mich App 313, 324; 836 NW2d 709 (2013). "Parenting time is the time a child spends with each parent." *Lieberman*, ___ Mich App at ___; slip op at 7. An established custodial environment is one "of a significant duration," *Baker*, 411 Mich at 579-580, that develops "over an appreciable time," MCL 722.27(1)(c). A substantial reduction in the days spent between parent and child will naturally affect the established custodial environment.

Because the trial court's parenting time order amounted to a change affecting the custodial environment, it committed clear legal error in its selection and application of the law from *Shade v Wright*. Instead, the court was required to conduct a parenting-time analysis using the proper threshold under *Vodvarka*. *Lieberman*, ___ Mich App at ___; slip op at 13-14. Accordingly, the parenting time order is vacated. If the court, on remand, finds by a preponderance of the evidence that defendant met the standards for "proper cause" or "change of

circumstances" under *Vodvarka*, defendant is then required prove by clear and convincing evidence that the parenting time modification is in the best interests of TFV.

Vacated and remanded. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens