# STATE OF MICHIGAN

# COURT OF APPEALS

BRANDON T. BABCOCK,

Plaintiff-Appellant,

v

KELLY WOLLBRINCK,

Defendant-Appellee.

UNPUBLISHED
February 17, 2015

No. 323988
Gratiot Circuit Court
Family Division
LC No. 09-000362-DP

Before: RIORDAN, P.J., and MURPHY and BOONSTRA, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting defendant's motion for a change of residence. We affirm.

## I. BACKGROUND

At issue in this appeal is MCL 722.31, also known as the 100-mile rule. See *Brausch v Brausch*, 283 Mich App 339, 352; 770 NW2d 77 (2009). That statute provides in relevant part:

> (1) A child whose parental custody is governed by court order has, for the purposes of this section, a legal residence with each parent. Except as otherwise provided in this section, a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued.
>
> * * *
>
> (4) Before permitting a legal residence change otherwise restricted by subsection (1), the court shall consider each of the following factors, with the child as the primary focus in the court's deliberations:
>
> (a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

-1-

(b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

(c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

Plaintiff and defendant have a child together who currently is seven years old. The parties have joint legal custody and defendant has primary physical custody. Before the events that gave rise to this appeal, plaintiff had parenting time with the child every Wednesday and every other weekend during the school year, every other week during the summer, and alternating holidays. Defendant admitted that plaintiff had regularly exercised his parenting time.

Defendant moved for a change of residence, seeking to move with the child to Laramie, Wyoming, where her parents live. She plans to live with her parents and attend the University of Colorado at the Anschutz Medical Campus, which is two hours away from Laramie, to obtain a master's degree as a nurse practitioner. She testified that she had yet not submitted an application because she first needs to establish her residency in Wyoming. She claims that as a nurse practitioner, her "potential income" would increase "by thousands of dollars per year." However, defendant admitted that there was no guarantee that she would be accepted into the program or that she would find a job if she successfully completed the program. Defendant testified that she had looked into a comparable program at Ferris State University, but that she does not "have the childcare to do it." However, she admitted that she had "used free childcare" from plaintiff's parents and that plaintiff's fiancée had cared for the child during visits with plaintiff. Defendant also testified that she had not looked into a comparable program at Central Michigan University. Defendant testified that her parents would watch the child for free in Wyoming. In addition, the public school is across the street from her parents' house. Defendant testified that if she moved to Wyoming, plaintiff could have parenting time during the summer and school breaks, which would turn out to be more time than that to which he was currently entitled.

The trial court granted defendant's motion. It stated that its decision hinged on MCL 722.31(4)(a) and (c), as the other factors were not in dispute. Regarding § 11(4)(a), the court found that although it was "somewhat speculative," defendant would enjoy increased

-2-

income as a nurse practitioner. The court also said that even if defendant did not become a nurse practitioner, she would have free daycare through her parents. Regarding § 11 (4)(c), the trial court found that this factor was satisfied because plaintiff was not a "day-to-day hands on" parent, defendant's proposed schedule would allow plaintiff substantial parenting time, and the child could communicate with plaintiff through Skype and other means.

The trial court ordered parenting time for plaintiff during all school breaks, including the summer, with defendant to bear all costs of transporting the child. The court also permitted parenting time one weekend per month in Wyoming and seven days of parenting time in Wyoming with seven days notice to defendant. The court ordered that each parent could have 30 minutes of "Skype Time" twice a week with the child.

## II. STANDARD OF REVIEW

"Generally, [this Court] review[s] a trial court's determination regarding a motion to change the domicile of minor children under the 'preponderance of the evidence' standard." *Rittershaus v Rittershaus*, 273 Mich App 462, 464; 730 NW2d 262 (2007). This Court reviews the trial court's findings regarding the factors found in MCL 722.31(4) under the great weight of the evidence standard. *Id*. Under this standard, "this Court defers to the trial court's findings of fact unless the trial court's findings 'clearly preponderate in the opposite direction.' " *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009), quoting *Fletcher v Fletcher*, 447 Mich 871, 878; 526 NW2d 889 (1994). This Court reviews for an abuse of discretion the trial court's ultimate decision on a motion to change a child's domicile. *Ritterhaus*, 273 Mich App at 464.

In determining whether a change of residence is warranted, the trial court's primary focus must be on the child. MCL 722.31(4). In this case, both parties agree that the only factors at issue are MCL 722.31(4)(a) and (c).

## III. ANALYSIS
### A. MCL 722.31(4)(a)

Again, the trial court found that the move would allow defendant to become a nurse practitioner, which would increase her income. Plaintiff argues that the trial court's reasoning was erroneous because the court focused on the potential improvement in defendant's life, not the child's. However, "[i]t is well established that the relocating parent's increased earning potential may improve a child's quality of life . . . ." *Rittershaus*, 273 Mich App at 466.

Plaintiff also argues that the potential improvement was too speculative to warrant granting the motion. Plaintiff calls particular attention to Judge Servitto's dissent in *Peck v Peck*, unpublished opinion per curiam of the Court of Appeals, issued March 8, 2012 (Docket No. 306329) (SERVITTO, J., dissenting), which was subsequently adopted by order of our Supreme

Court. *Peck v Peck*, 491 Mich 938; 815 NW2d 130 (2012).[1] In that case, the defendant-mother moved to change her child's residence to Arkansas, as "she had accepted a lateral transfer with her employer." *Id*. at 1 (opinion of the Court). She received a raise of $2,500 per year and a moving bonus of $4,500. *Id*. at 9 (SERVITTO, J., dissenting). She also claimed that she "would have more opportunity for promotion . . . ." *Id*. The trial court denied the defendant's motion, and this Court reversed. *Id*. at 1 (opinion of the Court).

However, Judge Servitto dissented. Regarding the defendant's assertion that she would have more opportunity for promotion, Judge Servitto found "nothing in the record, aside from her own hope and her statements that such opportunities *may* be available, to support this claim." *Id*. (emphasis in original). In addition, Judge Servitto found that the defendant's increased salary and moving bonus were "not likely a benefit to be seen by the minor child and/or defendant," because the defendant would have to spend $400 per month to transport the child to and from Arkansas. *Id*. at 10.

We find the circumstances in *Peck* to be distinguishable from those of the instant case. In *Peck*, Judge Servitto pointed out that the costs of transporting the minor child from Arkansas to Michigan once a month would obviate the raise the defendant would receive. *Id*. at 10. Further, she noted that nothing in the record supported the defendant's claim that more advancement would be available. Here, the trial court found that if defendant moved to Colorado, she would be relieved of the expense of daycare; further, the trial court noted that while defendant's plan contained an element of speculation, defendant had spoken with individuals at a school in Colorado and had "a formulated reasonable belief that assuming she were able to complete the [nurse practitioner] program, that ultimately certification as a nurse practitioner would, in fact, provide her with a better quality of life."[2]

We therefore conclude the trial court did not err in determining that the factor listed in MCL 722.31(4)(a) supported its grant of defendant's motion.

B. MCL 722.31(4)(c)

---

[1] Judge Servitto's dissent is consequently binding precedent. *Tyra v Organ Procurement Agency of Michigan*, 302 Mich App 208, 219; 850 NW2d 667 (2013).

[2] Further, Judge Servitto in *Peck* found the defendant's proposed plan for parenting time unrealistic, in part because of special needs of the child; special needs not present in the instant case. *Id*. at 11. Finally, Judge Servitto noted that the plaintiff's parenting time would be substantially altered because the plaintiff "never went more than twelve days without seeing his son and was able to attend his school events, school meetings, some doctor appointments, and occasional sporting events." *Id*. Here, as discussed further in part III(B), *infra*, although plaintiff's parenting time would be altered, the trial court found that the relationship could be continued because plaintiff was not a "day-to-day hands on" parent, that the proposed schedule granted substantial parenting time, and that plaintiff could communicate with his child through video chat technology.

"Implicit in factor (c) is an acknowledgement that weekly visitation is not practicable when parents are separated by state borders." *McKimmy v Melling*, 291 Mich App 577, 583; 805 NW2d 615 (2011). In the same vein, MCL 722.31(4)(c) does not require the modified parenting-time schedule to "be equal with the old visitation plan, as such equality is not possible." *Id*. This Court has suggested that "extended periods of visitation will foster, not hinder, a closer parent-child relationship." *Id*. (internal quotation marks and citation omitted). A trial court may also consider "the use of modern technology," as this can diminish the separation between the parent and child. *Id*.

Plaintiff again draws attention to Judge Servitto's dissent in *Peck*. In *Peck*, the "defendant proposed enrolling the child in a year round school which she felt would not only be better suited to address his needs, but would also allow him to spend approximately one week per month with plaintiff." *Peck*, unpub op at 11 (SERVITTO, J., dissenting). The defendant proposed that she would pay for all transportation expenses and would allow the child to spend all holidays with the plaintiff. *Id*. Judge Servitto found the plan "ambitious and liberal" but doubted that it was realistic given the child's problems. *Id*. "Additionally," Judge Servitto wrote, "the extra-curricular activities that defendant had the child in and presumably plans to continue him in, along with his several times per month educational therapy sessions and proposed tutoring would all be impacted by such a strenuous travel schedule." *Id*. Judge Servitto also agreed with the trial court "that no order would be able to provide plaintiff with the positive and regular parenting time he has enjoyed." *Id*. She explained:

> With the parenting time schedule that was in place, plaintiff never went more than twelve days without seeing his son and was able to attend his school events, school meetings, some doctor appointments, and occasional sporting events. If a move to Arkansas were permitted, no matter what parenting time schedule was put into place, plaintiff would frequently go more than twelve days without seeing his son, and would not be able to attend those school and sporting events or school and medical appointments. [*Id*.]

The circumstances of this case are distinguishable from *Peck*. First, the child does not have any special needs that were presented to the trial court. Furthermore, the travel schedule for the child will not be monthly, and consequently presumably not as strenuous as the schedule in *Peck*. In addition, although plaintiff saw the child frequently, he admitted that he was not able to be involved with her schooling, and there was no indication that he handled day-to-day matters such as doctor appointments.

The trial court reasonably concluded that the proposed schedule would preserve and foster the parental relationship between the child and plaintiff. Although plaintiff would not see her weekly, his parenting time actually would increase under the proposed schedule. It includes several long periods of visitation, including holidays and summer vacations. These extended periods serve to foster a parent-child relationship. Finally, plaintiff will be able to Skype with his daughter for 30 minutes twice a week, which will maintain frequency of contact, albeit not in person.

In the end, perhaps the most important difference between *Peck* and the instant case is the standard of review used by the reviewing court. In *Peck*, this Court reversed the trial court's

denial of the defendant's motion to change domicile on the grounds that it was against the great weight of the evidence and thus that the trial court had abused its discretion. *Id*. at 9 (opinion of the Court). Judge Servitto's dissent, adopted by our Supreme Court, stated that the trial court's denial was not against the great weight of the evidence and was "sound and supported by the evidence." *Id*. at 13 (SERVITTO, J., dissenting). Here, the trial court granted defendant's motion. We do not review the trial court's decision de novo; nor is it sufficient for this Court to find that it would have made a different decision in the trial court's place. Rather, "[a]n abuse of discretion is found only in extreme cases in which the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will or the exercise of passion or bias." *Rittershaus*, 273 Mich App at 464-465 (internal quotation marks and citation omitted). The trial court's factual findings did not "clearly preponderate in the other direction" and so we defer to them. *Corporan*, 282 Mich App at 605. Nor do we find the trial court's ultimate decision to rise to the level of violation of fact or logic. *Rittershaus*, 273 Mich App at 464-465.

Affirmed.

/s/ Michael J. Riordan
/s/ William B. Murphy
/s/ Mark T. Boonstra