*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JACOB M. SADRO,

        Plaintiff-Appellant,

v

MARY JO ROGGENBUCK,

        Defendant-Appellee.

UNPUBLISHED
February 7, 2019

No. 343879
Huron Circuit Court
Family Division
LC No. 09-004181-DP

Before: MURRAY, C.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order denying his motion to reinstate his parenting time with the parties' minor child, MR, and affirmatively suspending his parenting time. We affirm.

## I. BACKGROUND

In 2009, plaintiff's paternity of MR was established by DNA testing. In 2010, a final order was entered granting both parties joint legal custody, granting defendant physical custody, and awarding plaintiff reasonable parenting time. A contentious parenting-time dispute has ensued ever since. The record is replete with competing motions and notices of show-cause hearings based on the denial of parenting time. Additionally, between 2009 and 2013, 15 complaints were filed with Children's Protective Services (CPS), raising various allegations of abuse and neglect, sexual assault, improper supervision, and more.[1]

In 2013, an abuse and neglect proceeding was initiated against both parents, aimed at determining whether MR had been sexually assaulted and, if she had not been, why she was

---

[1] Three of the abuse and neglect complaints were filed by plaintiff, and 12 were filed by defendant.

saying that she had been. MR was removed and initially placed into foster care, then transitioned to the home of a maternal relative, and finally returned to defendant. Ultimately, the court-appointed counselor during the protective proceedings was unable to reach a conclusion about the alleged sexual abuse, but concluded that the child was "caught in the middle of parental conflict." However, in January 2016, plaintiff was accused of criminal sexual conduct offenses involving an unrelated minor child, and by June 2016, he faced charges in two separate criminal matters related to the inappropriate touching of minor children. In August 2016, plaintiff's parenting time was suspended pending the outcome of the criminal charges, and the protective proceedings were closed at the petitioner's request because no further services could be offered by the Department of Health and Human Services.

In February 2017, following his acquittal in one criminal case and the dismissal of the second criminal case, plaintiff filed a motion for reinstatement of his parenting time. The trial court found that plaintiff's acquittal was proper cause to re-evaluate plaintiff's parenting time and requested a recommendation from the Friend of the Court (FOC). In September 2017, the FOC issued a recommendation that plaintiff be granted supervised visitations with a gradual and progressive increase in his time. Defendant objected, and several hearings were held on the matter before the trial court entered an order suspending plaintiff's parenting time and ordering that the child undergo a trauma assessment.

## II. ISSUES AND ANALYSIS

Plaintiff first argues that the trial court's suspension of his parenting time was against the great weight of evidence because there was no evidence that parenting time with plaintiff would endanger MR's physical, mental, or emotional health. Plaintiff argues that because none of the allegations against him have ever been substantiated despite at least 15 referrals to CPS, the unsubstantiated allegations of sexual abuse are insufficient to meet the burden of clear and convincing evidence required for the suspension of his parenting time. Rather, plaintiff contends that MR is being mentally and emotionally harmed by the lack of parenting time with him.

In a case like this, involving the appeal of an order for parenting time entered after an evidentiary hearing, the standard of review is critical. "Orders concerning parenting time must be affirmed on appeal unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Shade v Wright*, 291 Mich App 17, 20-21; 805 NW2d 1 (2010) (quotation marks and citation omitted). Under the great weight of the evidence standard, the trial court's findings should be affirmed unless the evidence clearly preponderates in the opposite direction. *Id*. at 21.

Our Supreme Court has explained that MCL 722.28 "distinguishes among three types of findings and assigns standards of review to each." *Fletcher v Fletcher*, 447 Mich 871, 877; 526 NW2d 889 (1994). Findings of fact, such as the trial court's findings on the statutory best-interest factors, are reviewed under the "great weight of the evidence" standard. *Id*. at 878-879. Discretionary rulings, such as to whom custody is awarded, are reviewed for an abuse of discretion. *Id*. at 879. An abuse of discretion exists when the trial court's decision is "palpably and grossly violative of fact and logic . . . ." *Id*. at 879-880 (quotation marks and citation

omitted). Finally, "clear legal error" occurs when a court incorrectly chooses, interprets, or applies the law. *Id*. at 881.

Once a child's paternity is established, the trial court has the authority and responsibility to enter orders controlling child custody and parenting time. *Demski v Petlick*, 309 Mich App 404, 441; 873 NW2d 596 (2015). Section 7(1)(b) of the Child Custody Act (CCA), MCL 722.21 *et seq*., provides as follows:

> (1) If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, *for the best interests of the child* the court may do 1 or more of the following:

> \* \* \*

> (b) Provide for reasonable parenting time of the child by the parties involved . . . by general or specific terms and conditions. Parenting time of the child by the parents is governed by [MCL 722.27a]. [MCL 722.27(1)(b) (emphasis added).]

Therefore, "parenting time shall be granted to a parent in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time." MCL 722.27a(1).

A parent seeking to modify a parenting time order must first establish that there is a proper cause or change in circumstances that warrants the modification. *Lieberman v Orr*, 319 Mich App 68, 81; 900 NW2d 130 (2017); MCL 722.27(1)(c). Further, "[i]n a parenting-time matter, when the proposed change would not affect the established custodial environment, the movant must prove by a preponderance of the evidence that the change is in the best interests of the child." *Lieberman*, 319 Mich App at 84. The best-interest factors are:

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.

> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

> (d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

> (e) The permanence, as a family unit, of the existing or proposed

-3-

custodial home or homes.

       (f)  The moral fitness of the parties involved.

       (g)  The mental and physical health of the parties involved.

       (h)  The home, school, and community record of the child.

       (i)  The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

       (j)  The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.  A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

       (k)  Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

       (*l*)  Any other factor considered by the court to be relevant to a particular child custody dispute.  [MCL 722.23.]

However, if "it is shown on the record by clear and convincing evidence that it would endanger the child's physical, mental, or emotional health," the court need not order parenting time.  MCL 722.27a(3).  To be clear and convincing, the evidence must produce in the trier of fact a firm conviction as to the truth of the precise facts at issue.  *Hunter v Hunter*, 484 Mich 247, 265; 771 NW2d 694 (2009).

The trial court's findings were not against the great weight of the evidence, and its ultimate disposition of plaintiff's motion was not an abuse of discretion.  While it is true that in 2013 DHHS recognized that parental conflict was a factor that affected MR's mental health even though no sexual abuse allegations were substantiated, in 2016, plaintiff was charged with criminal sexual conduct involving unrelated minors.  Further, in November 2017, MR's counselor testified that MR was traumatized, and had relayed that she was sexually assaulted by her father, and that the fact that plaintiff was never convicted did not matter, because MR opined it happened.  MR was experiencing trauma responses, and the counselor opined that there should continue to be no contact between MR and plaintiff, and that any forced contact would not be beneficial to MR.

Defendant's expert in child trauma, Dr. Ricky Greenwald, testified that MR had post-traumatic stress and that an "overwhelming collection of multiple types of evidence" pointed to his conclusion that plaintiff had traumatized MR.  Further, the FOC investigator changed her recommendation based on the testimony presented; she suggested that a trauma assessment

should be completed and that "it would be appropriate for MR to undergo trauma therapy before we pursue parenting time."

In rendering its decision, the trial court conducted a lengthy analysis of the parenting-time factors set forth in MCL 722.27a(7), and the best-interest factors set forth in MCL 722.23. The court found the parties equal on factors (b) through (h) and (k). The court concluded that factor (a) "slightly . . . favored . . . mother than father because there are more existing ties between mother and child than father and child." The court found that factor (i) "somewhat favors mother; not by much, but it does." Regarding factor (j), which the court indicated was a "huge Factor for the Court," the trial court concluded that "it's equally bad for both," because "[t]hey cannot get along and they don't get along and . . . they may never get along." The court noted that the custody dispute "just keeps going on and on and the question is, is it because mother does not want dad to have a relationship with the child? Or, is it because mother's protecting the child from alleged abuse by father? That is the ultimate question . . . ."

The court then considered at length factor (*l*) ("[a]ny other factor considered by the court to be relevant to a particular child custody dispute"), noting that defendant's expert testimony was unrebutted. The trial court expressed concern that MR was experiencing trauma as evidenced by the testimony recounting MR's reactions to a chance encounter with plaintiff, her headaches, stomachaches, and more as it pertained to plaintiff. Accordingly, the trial court determined that there was clear and convincing evidence that MR would be "endangered" both physically, through the physical manifestations of her anxiety, and mentally if parenting time were to resume. A review of the testimony about MR's current state of mind regarding plaintiff supports a conclusion that this finding was not against the great weight of the evidence because the facts do not "clearly preponderate in the opposite direction." *Shade*, 291 Mich App at 21.

Plaintiff argues that Dr. Greenwald's conclusion that harm would occur to MR if plaintiff were awarded parenting time is merely speculative and that MR's feelings towards plaintiff were affected by his conflict with defendant. Indeed, Greenwald confirmed that he had never spoken to MR. However, following a review of MR's counselor's testimony, reports from other doctors, the FOC recommendations, police reports, and more, Greenwald believed that MR was aware of the parental conflict, although her exposure to this conflict was not traumatic. He added that "trauma is subjectively experienced" and that whether or not a crime occurred, MR had been traumatized. Greenwald indicated that any exposure to plaintiff would re-traumatize MR every time, and that "this type of traumatization is what leads to the full range of very serious problems in children, teens, and adults." In his opinion, contact between MR and her father at that time was "a really bad idea" and would "permanently doom any prospect of a positive relationship" between them. Accordingly, even supervised visits could re-traumatize MR, and forcing reunification "would do immense harm long-term." Moreover, Greenwald opined that defendant's motivation for seeking suspension or supervision of plaintiff's parenting time was consistent with "a mother who believes that her child is at risk."

The trial court had the discretion to weigh the credibility of the evidence and the witness testimony. *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 459; 705 NW2d 144 (2005). While defendant may disagree with Greenwald's conclusions, his unrebutted testimony supports the trial court's finding that parenting time could be emotionally or mentally damaging to MR. MCL 722.27a(3).

Furthermore, plaintiff argues that allowing parenting time with plaintiff may help her realize that her previous fears are unwarranted and help her achieve a healthy, loving relationship with plaintiff once again. However, as noted above, both MR's counselor and Greenwald opined that forcing reunification on MR before she was ready would not be beneficial, but rather could be harmful to MR and even her long-term relationship with plaintiff. Overall, we cannot conclude that the trial court's finding that parenting time with plaintiff would harm MR mentally or emotionally was against the great weight of evidence. *Shade*, 291 Mich App at 21.

Plaintiff also argues that he and MR had positive parenting-time interactions. However, whether parenting time went well in the past is not of consequence to whether parenting time would be harmful to MR *now*. Indeed, while the trial court did not find any evidence that plaintiff acted inappropriately with MR or did anything to purposely damage her mental or emotional health, the trial court opined that MR was experiencing trauma. While unable to make a determination of how that trauma occurred, the trial court stated,

> [A]ll these allegations point to father . . . having some . . . inappropriate sexual contact with the child. The Court's not finding that because even Dr. Greenwald testified, it may not be sexual in nature I don't know, . . . but something traumatic happened and that's what needs to be worked on and discovered.

Accordingly, the trial court found it appropriate to suspend plaintiff's parenting time and proceed with a trauma assessment. This decision was supported by the testimony of expert witnesses, MR's counselor, and the FOC investigator, and was not against the great weight of the evidence. *Shade*, 291 Mich App at 21.

In sum, the trial court's finding that there was clear and convincing evidence that MR's mental and emotional health would be endangered by parenting time was not against the great weight of the evidence, because the facts do not "clearly preponderate in the opposite direction." *Shade*, 291 Mich App at 21. This finding was supported by the testimony of MR's past and current counselors and expert witnesses. Moreover, the testimony about MR's current mental state and traumatic reactions was unrebutted. Therefore, the trial court's order suspending parenting time is not "so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Id*. (quotation marks and citation omitted).

Plaintiff also argues that the trial court's order suspending his parenting time without ordering reunification therapy constituted a de facto termination of his parental rights. We disagree, and note that because plaintiff did not present this argument at the trial court level this argument is unpreserved. Accordingly, we review plaintiff's argument for plain error affecting substantial rights. *In re Williams*, 286 Mich App 253, 274; 779 NW2d 286 (2009).

Although the parent of a child has a fundamental liberty interest in the care, custody, and management of the child, see *Santosky v Kramer*, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982); *In re Beck*, 488 Mich 6, 11; 793 NW2d 562 (2010), as previously noted, if "it is shown on the record by clear and convincing evidence that it would endanger the child's physical, mental, or emotional health," the court need not order parenting time. MCL 722.27a(3).

Plaintiff cites a series of unpublished decisions in which trial courts have ordered reunification therapy in support of his assertion that "it is common practice" to order reunification therapy when parenting time is suspended. However, plaintiff presents no authority for the proposition that failure to order reunification therapy constitutes an error by the trial court. Indeed, the Supreme Court's order in *Ludwig v Ludwig*, 501 Mich 1075 (2018), supports the opposite conclusion—that reunification therapy is ordered only when it is considered in the best interests of the child.

Here, because plaintiff failed to raise this issue with the trial court, the trial court did not specifically address whether reunification therapy was in MR's best interests. However, given that both Greenwald and MR's counselor indicated that any contact between plaintiff and MR before she was ready could be harmful to MR and even her long-term relationship with plaintiff, we are not persuaded that a plain error occurred by the trial court's failure to sua sponte order reunification therapy. Moreover, the trial court's order indicates that the matter of parenting time may be revisited after the completion of the trauma assessment. Accordingly, the trial court order provides an adequate mechanism to determine when parenting time should be reviewed.

Affirmed.

/s/ Christopher M. Murray
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro