*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHEANA KEINATH,

      Plaintiff-Appellee,

v

MICHAEL KEINATH,

      Defendant-Appellant.

UNPUBLISHED
April 7, 2022

No. 358548
Tuscola Circuit Court
Family Division
LC No. 20-031322-DM

Before: GLEICHER, C.J., and K. F. KELLY and PATEL, JJ.

PER CURIAM.

Defendant appeals by right the trial court's judgment of divorce in which the trial court ordered primary physical custody of the parties' minor children to plaintiff. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

The parties married on September 22, 2007 and have two minor children, SK and TK. They moved into the current marital home in October 2017, where plaintiff now resides with the children. In December 2017, plaintiff discovered that defendant had engaged in an affair with a coworker, and the parties temporarily separated. There were numerous confrontations between the parties around the time of this initial separation when defendant would allegedly become physical and violent. There was also an argument between the parties in August 2020, at which time defendant cut his hand on a glass candle he broke. In September 2020, plaintiff discovered a second affair between defendant and a woman he is now dating.

In early October 2020, defendant left the marital home. At the time, the parties agreed that defendant would still get the children for three afternoons per week and every other weekend. Defendant initially exercised his afternoon time in the marital home, but conflict arose when plaintiff and her father arrived at the home during defendant's parenting time. There also was an instance during this time in which defendant threw one of the children's puzzles across the room. After some time, defendant began exercising his parenting time elsewhere.

-1-

Though defendant provided substantial assistance in caring for the children during the majority of the parties' marriage, this changed once he left the marital home. After temporarily staying with a cousin, defendant secured a rented condominium with space for him and the children. However, at the same time, defendant was searching for alternative housing that would accommodate the new family he was planning with his current girlfriend, at whose house he spent multiple nights per week. Plaintiff solely handled the children's morning and evening routines, took them to all doctor's visits, and attended school conferences, though defendant still attended the children's dentist appointments and select after-school activities, and regularly spoke with them over the phone.

Plaintiff filed for divorce on October 15, 2020. With respect to custody of the children, plaintiff alleged that it was in the children's best interests for the trial court to grant her physical custody and grant joint legal custody with defendant. Defendant filed an answer, countering that it was in the children's best interests for the parties to share joint legal and joint physical custody. During the divorce proceedings, plaintiff filed an ex parte motion for temporary custody of the marital home and children, which the trial court granted.

A hearing before a referee was conducted, after which the referee entered a report and recommendation concluding that clear and convincing evidence supported plaintiff having primary physical custody of the children. Following the de novo hearing before the trial court, the trial court rendered an opinion regarding its judgment of divorce. Regarding custody, the trial court determined that the children had an established custodial relationship with plaintiff. And after evaluating each best interest factor, the trial court concluded that defendant failed to demonstrate that modification of the ex parte order to equal physical custodial time was warranted. Therefore, the trial court awarded the parties joint legal custody, with plaintiff having primary physical custody and defendant having parenting time per the order. This appeal followed.

II. STANDARDS OF REVIEW

This Court applies three standards of review in child custody cases:

The great weight of the evidence standard applies to all findings of fact. A trial court's findings regarding the existence of an established custodial environment and regarding each custody factor should be affirmed unless the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. Questions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law. [*Vodvarka v Grasmeyer*, 259 Mich App 499, 507-508; 675 NW2d 847 (2003) (quotation marks and citations omitted).]

A trial court abuses its discretion when the result is "so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *Fletcher v Fletch*er, 447 Mich 871, 879-880; 526 NW2d 889 (1994) (quotation marks and citation omitted). "A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Seifeddine v Jaber*, 327 Mich

App 514, 516; 934 NW2d 64 (2019) (citation omitted). "[A] reviewing court should not substitute its judgment on questions of fact unless the factual determination clearly preponderate[s] in the opposite direction." *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010) (quotation marks and citation omitted; second alteration in original). Furthermore, in reviewing a trial court's findings, this Court defers to any determinations of credibility made below. *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011).

## III. ANALYSIS

On appeal, defendant contends the trial court made factual findings against the great weight of the evidence when it evaluated the children's established custodial environment and statutory best interest factors, and abused its discretion when it awarded primary physical custody to plaintiff. We disagree.

Custody disputes are resolved by determining the best interests of the child using the statutory factors set forth in MCL 722.23. *Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d 748 (2001). These factors are:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a

child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23.]

Furthermore, because a trial court may not "issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child," MCL 722.27(1)(c), it must generally make a finding of whether an established custodial environment existed with either or both parties before evaluating a child's best interests. See *Brausch v Brausch*, 283 Mich App 339, 356 n 7; 770 NW2d 77 (2009). An established custodial environment exists "if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort," MCL 722.27(1)(c), though a child can have multiple custodians and custodial environments. See *Berger v Berger*, 277 Mich App 700, 707; 747 NW2d 336 (2008). If a proposed change to custody would modify an established custodial environment, then the proponent of the change must prove by clear and convincing evidence that it is in the child's best interests. See *Pierron*, 486 Mich at 92. On the other hand, if the proposed change would not modify an established custodial environment, then the proponent need only prove by a preponderance of the evidence that it is in the child's best interest. *Id*.

Defendant asserts the trial court made findings against the great weight of evidence when it determined that (1) the children only had an established custodial environment with plaintiff; (2) best interest factors (a), (b), (d), (e), (f), (h), and (k) all favored plaintiff; and (3) factor (j) was neutral between the parties. Defendant asserts, therefore, that the trial court abused its discretion in awarding primary physical custody to plaintiff.

## A. CUSTODIAL ENVIRONMENT

Regarding whether the children had an established custodial relationship with either or both parties, the trial court stated:

When Plaintiff filed her Complaint for Divorce on October 15, 2020, the parties were residing together at the marital home. Thereafter, on November 6, 2020, an Ex Parte Order was entered, awarding the Plaintiff with exclusive possession of the marital home, as well as primary domicile of the children. The parties were awarded joint legal custody and the Defendant was awarded parenting time on Monday, Wednesday and Fridays, from approximately 3:00 p.m. until 7:00 p.m. This routine has continued to date.

\* \* \*

Prior to November 2020, the parties would work together for the care of the children. Both parties would provide care in the morning. The Defendant would retrieve the children from either school or day care and provide the care until the

Plaintiff returned home in the evening. Then, again, both parties would provide care until bedtime. Thereafter, the Defendant would leave for work and the Plaintiff would be the supervising parent within the home.

Beginning in November 2020, the care of the children changed. Originally, the Defendant was to retrieve the children on every Monday and Wednesday from 3:00 [to] 8:00 p.m. and then on alternate Thursdays and on the "off weeks" from Friday through Sunday. Due to the plans of each party, the Defendant did not receive his first weekend. Thereafter, an Order was entered providing the Defendant with parenting time on Monday, Wednesday and Fridays from afterschool until 7:00 p.m. The Plaintiff has been responsible for the remainder of the care. This has been the routine of the children for the past 7 ½ months.

From these facts, the trial court concluded that, in their current routine, the children looked to plaintiff for guidance, discipline, and the necessities of life and, accordingly, that the children had established a custodial environment with her alone. The trial court explicitly acknowledged the delays in the proceedings prior to the referee hearing and de novo hearing, but, citing *Treutle v Treutle*, 197 Mich App 690, 693; 495 NW2d 836 (1992), the court stated that it was limited to determining "if a custodial environment has been established and not the reason why it was established."

Defendant claims the trial court's finding regarding the children's custodial environment ignored that the children were under the care of both parties for the overwhelming majority of the children's lives. Defendant claims he regularly assisted in caring for the children, at least until the parties' separation and the trial court's imposition of restrictions on his time with them. Defendant argues that this long-standing situation evidenced the children's established custodial environment with both parents, which, according to him, could not be undone in the relatively short amount of time since the parties' separation.

In *Bofysil v Bofysil*, 332 Mich App 232, 243-244; 956 NW2d 544 (2020), we concluded the trial court's findings that the child's established custodial environment was solely with a stay-at-home parent was against the great weight of the evidence. The trial court erred by discounting the plaintiff's status as a working parent and her other efforts to care for the children when not working. See *id*. Similarly here, defendant maintains that he continued to care for the children to the best of his ability following the court's restrictions on his time and, therefore, believed they still looked to him for care, comfort, and guidance. Accordingly, defendant asserts that under *Bofysil*, the trial court committed error by concluding that the children only had an established custodial environment with plaintiff.

Contrary to defendant's argument, the trial court explicitly acknowledged the parties' joint caregiving efforts and shared responsibility for raising the children during the majority of their marriage. The trial court recognized that this preexisting situation changed as a result of the separation, after which the children primarily looked to plaintiff for guidance and support. This conclusion was adequately supported by the record: during the period of separation plaintiff resided with the children in their existing home, handled their entire daily routines and

appointments, and was involved in their schooling. In contrast, defendant spent time with the children for three afternoons per week.[1]

Furthermore, *Bofysil* is unhelpful to defendant. Rather than one parent being responsible for the majority of caregiving and the other being the family's primary wage earner, see *Bofysil*, 332 Mich App at 237, here both parties worked outside the home and maintained separate bank accounts throughout the marriage. Moreover, in *Bofysil*, the Court stressed that the parents, while occupying distinct roles in the home, both provided "security, stability, and permanence" for the children. *Bofysil*, 332 Mich App at 244. In contrast with the present case, however, plaintiff has been primarily responsible for the children since fall 2020 such that they primarily look to her for security and guidance. Accordingly, the trial court's finding that the children had an established custodial environment solely with plaintiff was not clearly erroneous. See *Seifeddine*, 327 Mich App at 516.

## B. BEST INTEREST FACTORS

The trial court found that factor (a) (love, affection, and other emotional ties between parties and child) favored plaintiff. Defendant contends that the trial court unduly faulted him for the alleged deterioration of his relationship with the children and ignored substantial evidence that plaintiff actively poisoned his relationship with the children. Accordingly, defendant claims this factor should have been equal between the parties or favored him. While noting both parties' love and affection for the children, the trial court stated that "[t]he crux of this factor . . . lies in the emotional ties that exist." The trial court elaborated:

> The Plaintiff has a good, strong bond with each child. The Defendant, though, has admitted that his bond with [SK] is not good. He testified that he tries to hug [SK] but she doesn't reciprocate. He believes that more time with [SK], as well as with [TK], will improve the relationship. Both children's demeanor has reflected disrespect and has gotten worse. The emotional ties between the Defendant and the children have diminished. During the first hearing in January 2021, the Defendant was having pretty good conversations with the children during the week. However, over the months, the conversations have not proceeded well. This is sad. Pursuant to the total proofs, the deterioration of the relationship may be tied to the Defendant having a girlfriend. And, while the Court is a firm believer that there is hope that the relationships can be mended, the Court must view the facts that are presented at the time of its determination.

---

[1] The trial court correctly declined to consider any impact on the children's custodial environment resulting from the ex parte order itself or the delay in the proceedings below. See *Berger*, 277 Mich App at 707 ("A custodial environment can be established as a result of a temporary custody order, in violation of a custody order, or in the absence of a custody order."); *Treutle*, 197 Mich App at 693 ("In determining whether a custodial environment exists, the court's concern is not with the reasons behind the custodial environment, but with the existence of such an environment.").

We disagree with defendant that this finding was made against the great weight of evidence. It is undisputed that defendant had weaker emotional ties to the children, as he conceded at both the referee hearing and the de novo hearing that his relationship with the children had deteriorated over time. While plaintiff admitted to telling defendant near the children that she wished the girlfriend would die at one point, she denied actively encouraging any resentment or alienation. And though defendant notes plaintiff's anger and toxicity toward him, he gives no other specific instances of any negative communication by her to the children. Thus, defendant offers nothing more than speculation that the children's disrespect originates from plaintiff.

The trial court also found factor (b) (capacity and disposition of parties to give child love, affection, and guidance and to continue education and raising child in his or her religion or creed, if any) favored plaintiff, noting defendant's inconsistency in his involvement in the children's education and in the type of discipline he administers to them. Defendant contends that the trial court failed to adequately consider his active involvement with the children over the majority of their lives. He also asserts that any noninvolvement was due to plaintiff or the COVID-19 pandemic. Defendant claims, therefore, that this factor should have been weighed equally between the parties.

Though the trial court acknowledged issues with plaintiff's discipline, it stressed that defendant would yell and swear at the children and noted two violent altercations in August and October of 2020. The court also highlighted defendant's reduced involvement in the children's lives since the parties' separation, stating:

> Since the separation of the parties, due to COVID, the Plaintiff has been the parent to take the children to appointments. The Defendant complained that there was a time that he was not informed of an appointment, but still admitted that he would not have attended. The Plaintiff has been the parent to ensure that the children are bathed and presentable. The Plaintiff has been the parent involved and attending parent-teacher conferences, as well as seeing to the completion of homework. In fact, the Defendant admitted that he hasn't talked to [SK]'s teacher over this past year. And, while the Defendant indicates that the Plaintiff reset the Defendant's phone, thus deleting the "school app" for tracking of progress, the Defendant hadn't bothered to reinstall it. The Plaintiff asserts that the Defendant has the app in his phone and that he just needs to set it up to receive notifications. Nevertheless, it is the Plaintiff that has attended conferences, field trips and assisted with the children's education.

We disagree with defendant that this finding was made against the great weight of evidence. The record demonstrates defendant stopped attending the children's doctor's visits and school conferences and events. While he blames COVID-19 and plaintiff's actions for his lack of involvement, the pandemic did not impede plaintiff's involvement with the children. It was thus not against the great weight of the evidence for the trial court to balance these factors to find plaintiff favored in the consistency of her discipline of the children and her involvement with the children's education.

The trial court also found that factor (d) (length of time child has lived in stable, satisfactory environment, and desirability of maintaining continuity) favored plaintiff. The court specifically

stated that the marital home, which plaintiff desired to keep and where the children had lived since 2017, was a stable, satisfactory environment. The court further acknowledged that, when the parties temporarily separated in 2017 and again in 2020, the children continued to reside with plaintiff in the marital home while defendant stayed in alternate locations. While noting that defendant was no longer making a claim to retain the marital home himself and did apparently have a place for the children to sleep at his current residence, the court also stated that defendant often stayed with the girlfriend, where there was insufficient room for the children, and was uncertain concerning where he would reside permanently in the future. From these facts, the trial court concluded that plaintiff provided the greatest amount of continuity for the children.

Defendant argues the trial court did not account for the fact that he had been forcibly removed from the marital home and, nevertheless, had since reestablished a stable environment and support system elsewhere. Defendant also contends that any instability resulting from his plans to purchase a new home with his girlfriend was mirrored by plaintiff's uncertainty about her own living situation after the divorce. Defendant asserts, therefore, that this factor should have been weighed equally between the parties. We disagree.

The trial court acknowledged the increased stability for the children in defendant's newly-acquired condominium, but merely noted the continued, relative instability of this arrangement compared with plaintiff's situation in the marital home. And though both parties recognized the possibility of needing to relocate following the divorce, defendant's testimony established a near-certainty of relocation, while plaintiff's goal was to keep the marital home where the children had lived consistently for years. In particular, defendant stated his current living situation was temporary, he planned to raise another child with his girlfriend, and the two were currently searching for new housing together. Furthermore, despite defendant's claim that the ex parte order forced him from the marital home, he concedes on appeal that he willingly left the home on October 5, 2020, one month before entry of the ex parte order. It was, therefore, not against the great weight of the evidence for the trial court to conclude this factor favored plaintiff.

With respect to factor (e) (permanence, as a family unit, of existing or proposed custodial home(s)), the trial court found this factor to be in plaintiff's favor as well. Comparing the family units of the parties, the court noted that plaintiff's extended family lived nearby and had close relationships with the children. In contrast, the court stated that defendant, who was expecting another child with his girlfriend, was expanding his own family unit. Furthermore, while recognizing the apparent ability of defendant's girlfriend to watch the children when defendant is unavailable, the court stressed defendant's stated uncertainty about his future living situation. Accordingly, the trial court concluded that plaintiff had the more stable and permanent family unit.

Defendant faults the trial court for apparently basing this finding on testimony regarding the availability and defendant's potential use of a babysitter if he was to be given partial custody. And defendant, similar to his argument on factor (d), also argues that the parties were facing similar levels of instability concerning their future living situations. Defendant thus claims that this factor should have been weighed equally between the parties.

We disagree with defendant that this finding was made against the great weight of evidence. To the extent that the trial court's findings concerning babysitting and extended family relied on the acceptability—as opposed to the permanence—of the parties' family units, the trial

court erred. See *Fletcher*, 447 Mich at 885 ("[A]cceptability of the home is not pertinent to factor e"). However, we do not interpret the trial court's finding in such a manner. Specifically, the trial court, noting the girlfriend's apparent availability to babysit *in conjunction with* defendant's stated uncertainty regarding their future living situation, found that it was "uncertain who will be a 'direct' family unit" with defendant. This uncertainty regarding the actual makeup of defendant's family unit implicates permanence, even if the facts also touch on comparative acceptability of the parties' family units as well. Moreover, it was undisputed that defendant would soon have a new child with his girlfriend and planned to find new housing with her, evincing a more fluid, changing family unit. Accordingly, the trial court's finding that plaintiff had a more permanent family unit was not against the great weight of the evidence.

Next, we address the trial court's finding that factor (f) (moral fitness of parties) favored plaintiff. Though recognizing that plaintiff's act of changing defendant's Caller I.D. to "cheater" reflected poorly on her, defendant did not submit any evidence to show this conduct was ever known to, or had an effect on, the children. On the other hand, the court found that it was "apparent" that defendant's affair and subsequent relationship with his girlfriend had a negative impact on the children.

Defendant asserts that the trial court improperly relied on his affair in evaluating his fitness as a parent because the affair only had an impact on the children due to plaintiff's own behavior. Defendant further asserts that, if anything, plaintiff's fitness was hindered by the affair as a result of her extreme emotional reaction to it and her inability to separate her feelings for defendant from decisions involving the children. According to defendant, the children would not have known of his affair until an appropriate time but for plaintiff's intentional involvement of the children. Accordingly, defendant asserts that this factor should have been weighed equally or slightly in favor of him.

In *Fletcher*, the Michigan Supreme Court stated with respect to extramarital affairs and child custody:

> Extramarital relations are not necessarily a reliable indicator of how one will function within the parent-child relationship. While such conduct certainly has a bearing on one's spousal fitness, it need not be probative of how one will interact with or raise a child. Because of its limited probative value and the significant potential for prejudicially ascribing disproportionate weight to that fact, extramarital conduct, in and of itself, may not be relevant to factor f. To the extent that one's marital misconduct actually does have an identifiable adverse effect on a particular person's ability or disposition to raise a child, those parental shortcomings often may be reflected in other relevant statutory factors. [*Fletcher*, 447 Mich at 887.]

In *Fletcher*, however, "the evidence[ ]was clear that the children had no knowledge of [the affairs]." *Id*. at 886. In contrast, the children here were aware of defendant's affair, at least to the extent that he had a new girlfriend and, later on, was having a child with her. Moreover, as the trial court recognized, SK, on numerous occasions, reacted negatively to defendant having his girlfriend around. Furthermore, concerning defendant's contention that plaintiff was responsible for any impact the affair had on the children, such a consideration is appropriately made under

factor (j) (willingness and ability of parties to facilitate and encourage close and continuing relationship between child and other parent).

The trial court also found factor (h) (home, community, and school record of child) favored plaintiff. Highlighting that both children had been living in the marital home for a significant time with plaintiff and attended school and other activities within that community, the court found that defendant's proposed living plans would result in relocation of the children away from their existing community environment. Defendant reiterates that the trial court discounted his extensive involvement with the children over the majority of their lives and improperly relied on his forced removal from the marital home. Defendant also notes testimony that he and the girlfriend were looking for housing in the same community as plaintiff. Defendant claims, therefore, that this factor should have been weighed equally between the parties.

For the same reasons given above, defendant's reliance on his involvement with the children before the parties' separation and on being allegedly forced from the marital home is unpersuasive. And while the record supports that defendant and the girlfriend were looking for new housing, no evidence was presented to show they were specifically looking in the children's existing community. In fact, while noting a general desire to keep the children "where they're at," defendant explicitly recognized that he did not yet have a specific location in mind and that their plans would be dependent on market conditions. Furthermore, plaintiff's uncontested testimony established that defendant refused to pay for SK's counseling. Therefore, it was not against the great weight of the evidence for the trial court to rely on defendant's lack of involvement over the prior year and likelihood of moving out of the community to conclude that the children's home, school, and community record favored plaintiff.

Lastly, we address defendant's contention that the trial court erred in finding factor (j) (willingness and ability of parties to facilitate and encourage close and continuing relationship between child and other parent) weighed equally between the parties. The trial court noted that, when discussing their separation, the parties were able to agree on a set schedule for defendant's parenting time, but problems arose when plaintiff had relatives pick up the children from school early and when she would arrive at the marital home early. The court stated further that this prompted defendant to take the children elsewhere and the parties' communication began to decline. The trial court also noted plaintiff's flexibility since entry of the ex parte order in adjusting to circumstances so defendant could exercise his allotted parenting time, as well as her offer for him to have additional time over the Easter holiday. The court also stated that the parties had abided by their set schedules since the order. Lastly, the trial court acknowledged that plaintiff has requested defendant spend more alone time with the children and defendant admitted that plaintiff is a proper caregiver for them, thus concluding that "both parties recognize the importance of the relationship that the children have with the other."

Defendant argues that the trial court erred because it ignored overwhelming evidence that plaintiff actively desired and attempted to poison defendant's relationship with the children. We disagree with defendant that this finding was made against the great weight of evidence. As we noted in addressing factor (a), while plaintiff admitted to telling defendant near the children that she wished his girlfriend would die at one point, she denied actively encouraging any resentment or alienation. Plaintiff also stated that she "tr[ies]" not to speak negatively about defendant in front

of the children. And though defendant notes plaintiff's anger and toxicity toward him, he provides no other specific instances of any negative communication by her to the children.

Relatedly, while defendant relies, in part, on plaintiff's opposition to defendant getting more parenting time even if it would reduce childcare costs, he still fails to show that any of plaintiff's negative feelings were ever specifically communicated to, or directed at, the children. Defendant merely assumes that the children's disrespect originates from plaintiff. And the trial court did consider plaintiff's failure to properly discipline the children when they disrespect defendant over the phone; however it also considered defendant's similar issues with discipline, including evidence that he would yell and scream at the children.

The trial court's findings were sufficiently supported by the evidence; thus, the trial court did not abuse its discretion by determining that it was in the children's best interest for plaintiff to have primary physical custody.

Affirmed. Plaintiff, as the prevailing party, may tax costs.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Sima G. Patel