*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THOMAS LYONS,

      Plaintiff-Appellant,

UNPUBLISHED
October 27, 2022

v

SHANNON LYONS,

      Defendant-Appellee.

No. 360944
Kent Circuit Court
LC No. 19-002379-DM

Before: SHAPIRO, P.J., and GADOLA and YATES, JJ.

PER CURIAM.

Plaintiff Thomas Lyons appeals as of right the trial court's order affirming the referee's recommendation and order awarding defendant Shannon Lyons sole legal and physical custody of the parties' children and requiring that plaintiff's parenting time be supervised. For the reasons stated in this opinion, we affirm the trial court's custody and parenting-time order.

## I. BACKGROUND

This case arises out of the parties' dispute concerning the legal and physical custody of their children following their divorce. The parties have three children: BL, LL, and CL. According to the consent judgment of divorce, the parties agreed to share joint legal and physical custody of the children. However, the parties' relationship deteriorated following the divorce. Pertinent to this appeal, defendant-mother moved to change custody on the basis of plaintiff-father's verbal and emotional abuse and his engagement in parental-alienation tactics.

The trial court concluded that defendant had established a significant change of circumstances or proper cause. As a result, the court ordered the matter to the Friend of the Court to investigate physical and legal custody, parenting time, and child support. Following that investigation, the Friend of the Court sent its report and recommendation to the trial court. Plaintiff filed an objection to that recommendation, and the trial court scheduled an evidentiary hearing before a referee. Following a five-day evidentiary hearing, the referee awarded defendant sole legal and primary physical custody. In addition, the referee recommended that plaintiff's parenting time with the children be supervised by one of his parents. Plaintiff filed an objection to the recommendation, but the trial court affirmed the recommendation. This appeal followed.

II. ANALYSIS

A. CUSTODY

Plaintiff first argues that the trial court abused its discretion by awarding sole legal and primary physical custody to defendant. We disagree.[1]

MCL 722.27 concerns the powers of the trial court in a child-custody dispute. In pertinent part, MCL 722.27(1)(c) provides that "[t]he court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." "[C]ustody disputes are to be resolved in the child's best interests, and [g]enerally, a trial court determines the best interests of the child by weighing the twelve statutory factors outlined in MCL 722.23." *Demski v Petlick*, 309 Mich App 404, 446; 873 NW2d 596 (2015) (quotation marks and citation omitted; alterations in original). "[T]he trial court has discretion to accord differing weight to the best-interest factors." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008).

Plaintiff argues that the referee erred by weighing the following factors in defendant's favor:

> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

> (d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

> (e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

---

[1] "All orders and judgments of the circuit court regarding child custody and parenting time are to be affirmed unless the trial court made findings of fact against the great weight of the evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." *Demski v Petlick*, 309 Mich App 404, 444; 873 NW2d 596 (2015), citing in part MCL 722.28. "In reviewing factual findings, this Court defers to the trial court's determination of credibility." *Id*. at 445. Moreover, "[t]he trial court's discretionary rulings, such as to whom to award custody, are reviewed for an abuse of discretion." *Id*. An abuse of discretion occurs "when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Id*.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

\* \* \*

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

Having reviewed the record, we conclude that the evidence did not clearly preponderate against the referee's findings on these factors. See *Fletcher v Fletcher*, 447 Mich 871, 879; 526 NW2d 889 (1994) (explaining that the "great weight of the evidence standard applies to all findings of fact" and that a trial court's finding on best-interest factors "should be affirmed unless the evidence clearly preponderates in the opposite direction.") (quotation marks and citations omitted).

Factor (b) concerns the capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any. The referee concluded that this factor strongly favored defendant, explaining that, although it believed that both parties would continue to give the children love and affection, she was more likely to provide the children with appropriate guidance. In support of this conclusion, the referee cited plaintiffs' involvement of the children in the parties' legal disputes and concluded that plaintiff's inappropriate discussions with the children concerning court matters called into question his judgment as a parent and rendered him unable or unwilling to provide proper guidance to his children. The referee further concluded that this factor was particularly weighty because appropriate guidance for young children with emotional challenges was critical.

On appeal, plaintiff asserts that this factor should not have favored either party because defendant also acted inappropriately by recording her interactions with plaintiff and the children, even when it made the children visibly upset. Even if the testimony to this effect is accepted as true, it does not clearly preponderate against the trial court's finding. The referee mentioned that on two occasions, BL accused defendant of lying after he returned from parenting time at plaintiff's home on the basis of things that plaintiff either showed or told him concerning the court proceedings. Moreover, the referee considered that plaintiff took BL to the police station to make a report against defendant's boyfriend and that he had LL, who was not even five years old, direct him to the boyfriend's home. Given plaintiff's involvement of the children in his disputes with defendant, the referee's conclusion that he would be unable to provide proper guidance to the children was not against the great weight of the evidence.

The referee also concluded that factor (c), which involves the capacity of the parties to provide the child with food, clothing, medical care, and other material needs, favored defendant.

The referee explained that although both the parties had the ability to provide for the children's needs, defendant had more of a disposition to do so. In support of this conclusion, the referee observed that once plaintiff became involved in the children's medical care, conflicts between the parties immediately caused delays in the children's medical treatment. In addition, the referee pointed out that plaintiff interfered with the boys' counseling to the point of destroying the therapeutic relationship, and a replacement had not been found. Finally, the referee observed that, although plaintiff was ordered to provide health insurance for the children, there had been issues with the children's insurance and medical providers because plaintiff lost his employer-provided insurance.

Plaintiff asserts that this factor should weigh neutrally between the parties or in slight favor of plaintiff because defendant's own testimony showed that she prevented plaintiff from being involved in the children's medical care and that she delayed treatments for the children so that she could attend the appointments. However, the referee's finding that this factor favored defendant is not against the great weight of the evidence. Although there was testimony showing that plaintiff was involved in some of the children's medical appointments and that the children could be on his wife's insurance, there was evidence to support the conclusion that defendant mainly handled the children's medical appointments and health insurance. The Friend of the Court evaluator testified that it was his understanding that defendant provided the majority of the children's medical care and it was defendant who applied for Medicaid health insurance for the children once plaintiff lost his health insurance. As it relates to the boys' counseling, both defendant and the counselor believed that the children would require a new counselor as a result of plaintiff's actions. Specifically, plaintiff would become angry in discussions with the counselor and on one occasion called her a "liar." Plaintiff commented on the counselor's Google page that she was dishonest and should not be allowed to conduct sessions with children. And defendant testified that when she suggested other counselors, plaintiff took over 30 days to respond, and the issue had yet to be resolved. Considering the testimony presented at the evidentiary hearing, and deferring to the trial court's credibility determinations, plaintiff has not shown that the referee's finding as to this factor is against the great weight of the evidence.

Plaintiff also contends that the referee erred in its conclusion that factor (d)—the length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity—favored defendant. According to plaintiff, there was no evidence presented that his current home was somehow unstable or lacking in permanence. He argues that the referee placed an improper emphasis on the fact that he moved five times in two years before moving to his house in Lowell, where he had resided for a year. However, as noted by the referee, defendant had lived in the marital home for over five years, which for all intents and purposes, was the only home known by the children. The children were comfortable there. They had friends in the neighborhood and were able to walk to and from school. As a result, although there was no evidence that plaintiff's home was unstable, the evidence presented as to the long-term stability of defendant's home supported the referee's finding that this factor favored defendant.

Factor (e) concerns the permanence, as a family unit, of the existing or proposed custodial home or homes. The referee found that this factor slightly favored defendant because plaintiff's pursuit of an unfounded charge that defendant's boyfriend assaulted one of the children. The referee also found that plaintiff's conduct thereafter was either intended to or had the effect of eroding the permanence of defendant's family unit. Plaintiff argues on appeal that, although his

-4-

actions were misguided, they did not undermine the stability of defendant's environment with the children, noting that defendant's boyfriend moved into her home after plaintiff's actions.

We do not believe that the referee's finding that this factor slightly favored defendant is against the great weight of the evidence. The Friend of the Court evaluator testified that plaintiff placed much of the blame in regard to issues concerning the children on defendant, her environment, or her boyfriend. In addition, the evaluator noted his concern about defendant's home environment because the children returned from parenting time with plaintiff calling defendant names such as "liar." The children also asked defendant to lie in regard to her boyfriend's presence so that plaintiff did not become angry. Plaintiff also called the police to perform an unnecessary welfare check on the children and called animal control several times in regard to defendant's puppy. The involvement of police and animal control caused stress on the children. It was not against the great weight of the evidence for the referee to conclude that plaintiff's actions negatively affected the permanence of the family unit at defendant's home.

Further, the referee concluded that the moral fitness of the parties, factor (f), strongly favored defendant. This conclusion was not against the great weight of the evidence. The record contained several examples of plaintiff calling defendant derogatory and vulgar names and the children calling defendant names when they returned home from parenting time with plaintiff. Further, plaintiff told BL that defendant was attempting to take the children away from plaintiff, presumably so that BL would become angry with defendant and confront her. Accordingly, we find no merit to plaintiff's argument on appeal that his conduct did not relate to his parental fitness. See *Fletcher*, 447 Mich at 887. Plaintiff also contacted the police and Children's Protective Services (CPS) in regard to the abuse allegations that were deemed to be unfounded. Instead of accepting the findings of the involved agencies, he continually contacted the police department and CPS and disputed their findings. CPS found his communications threatening. Plaintiff then created a flyer identifying defendant's boyfriend as a "child predator" and distributed that flyer in her neighborhood and at the children's school. The Friend of the Court evaluator opined that plaintiff intentionally described the boyfriend as a child predator to create fear even though it did not fit the actual allegation.

On appeal, plaintiff argues that defendant also admitted to using foul language toward plaintiff and his wife. However, defendant's admitted use of foul language on a couple of occasions does not sufficiently outweigh the evidence of plaintiff's negative actions and communications. Accordingly, the referee's conclusion that this factor strongly favored defendant is not against the great weight of the evidence.

Factor (g) is the physical and mental health of the parties. The referee concluded that this factor slightly favored defendant. First, the referee noted that neither party presented much, if any, evidence concerning their physical health. The only testimony involving mental health came from the Friend of the Court evaluator. The evaluator explained that the parties submitted to psychological evaluations and those evaluations did not reveal any troubling diagnosis for either party. However, the evaluator pointed out that there were numerous examples of manipulative conduct by plaintiff. The evaluator also noted that there were several troubling statements in plaintiff's evaluation. According to the evaluator, plaintiff was difficult to interview, and his responses showed a potential lack of insight into his own parenting deficits. The evaluator found that plaintiff twisted and reframed issues to help himself, and that he believed that everyone else

was incompetent, biased, and discriminated against him. The referee agreed with the evaluator's overall conclusion, but because there was no mental-health diagnosis and the psychological evaluations were not admitted into evidence, the referee found that this factor only slightly favored defendant.

The referee's conclusion was not against the great weight of the evidence. The Friend of the Court evaluator provided extensive testimony in regard to troubling behavior exhibited by plaintiff toward defendant, the children, the children's counselor, CPS workers, and police officers. He indicated that CPS workers found that plaintiff's communications were threatening and increasingly irrational. The evaluator opined that the conclusions in the plaintiff's psychological evaluation were consistent with his narrative that denied accountability for his conduct. For these reasons, the record contains sufficient support for the referee's narrow finding that this factor slightly favored defendant.

In regard to factor (j)—the willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent—the referee concluded that this factor strongly weighed in favor of defendant. This conclusion was not against the great weight of the evidence. On appeal, plaintiff asserts that he presented testimony showing that the parties effectively coparented for some time, and that defendant bore some responsibility for the conflict between her and plaintiff, and her and the children. However, the Friend of the Court evaluator expressed his opinion that the parties could not effectively coparent and that it was not in the children's best interests for the parties to have joint legal custody. As noted, the referee found that plaintiff used derogatory and vulgar insults in his communications with defendant and that the children would also do so after parenting time with plaintiff. Defendant also testified that plaintiff, in violation of the judgment of divorce, did not allow her to speak to the children while plaintiff was on vacation with the children for 11 or 12 days. Plaintiff testified that he enrolled the boys in equestrian vaulting, but he did not invite defendant to those events. And, as noted, plaintiff called the police, CPS, and animal control to initiate unfounded investigations involving defendant or her boyfriend. There was also testimony that plaintiff placed much of the blame concerning issues involving the children on defendant, her home, or her boyfriend. Given the evidence showing that plaintiff interfered with the children having a healthy relationship with defendant, the referee's finding that this factor strongly favored defendant was not against the great weight of the evidence.

Finally, plaintiff asserts that the referee erred by concluding that factor (k), which focuses on domestic violence, strongly favored defendant. Plaintiff reiterates his contention that the animosity between the parties went both ways; however, there was significant evidence supporting the referee's conclusion that plaintiff's conduct toward defendant constituted harassment and emotional abuse. Defendant described plaintiff as verbally and emotionally abusive and testified as to several examples. In one instance, defendant walked to school to pick up the children during her parenting time. Plaintiff followed them home on a dirt bike while revving the engine. He also dumped trash out of his car into her driveway while picking up the children. Police officers and CPS workers expressed concern in regard to plaintiff's behavior and suggested that defendant obtain a Personal Protection Order. Accordingly, plaintiff's argument on appeal is without merit, and the referee's finding as to this factor is not against the great weight of the evidence.

Because we affirm the trial court's weighing of each best-interest factor plaintiff contests on appeal, it necessarily follows that the trial court did not abuse its discretion by granting defendant sole legal and physical custody of the children. See *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 459-460; 705 NW2d (2005) (holding that, because the court properly considered each best-interest factor and rendered factual findings consistent with the record evidence, there was no basis on which to find that the trial court abused its discretion by granting the plaintiff sole physical custody of the child).

## C. PARENTING TIME

Plaintiff also argues that the trial court erred by ordering that his parenting time be supervised. We disagree.

A parenting time order "may contain any reasonable terms or conditions that facilitate the orderly and meaningful exercise of parenting time by a parent," including "[r]equirements that parenting time occur in the presence of a third person or agency." MCL 722.27a(9)(f). MCL 722.27a(1) states that "[p]arenting time shall be granted in accordance with the best interests of the child." "The best-interest factors in MCL 722.23 and the [parenting-time] factors listed in [MCL 722.27a(7)] are relevant to determining a child's best interests." *Demski*, 309 Mich App at 456.

In this case, the referee concluded that parenting-time factors (a), (c), (e), and (f) favored supervision of plaintiff's parenting time:

> (a) The existence of any special circumstances or needs of the child.
>
> * * *
>
> (c) The reasonable likelihood of abuse or neglect of the child during parenting time.
>
> * * *
>
> (e) The inconvenience to, and burdensome impact or effect on, the child of traveling for purposes of parenting time.
>
> (f) Whether a parent can reasonably be expected to exercise parenting time in accordance with the court order. [MCL 722.27a(7).]

The referee explained in regard to factor (a) that the children did not have any special circumstances that presented unusual needs; however, they exhibited emotional challenges. With respect to factor (c), the referee found no indication that either party would abuse or neglect the children. However, the referee explained that plaintiff's statements in his closing argument, in combination with other considerations, caused concern for the physical and emotional health of the children while in his care. After stating that he would never stop fighting for his children, plaintiff stated, "I can anticipate this Court's decision, however, I can also anticipate something traumatic happening to the children in the near future, specially [LL] if there is a drastic change in parenting time in favor of defendant." Plaintiff argues that his statement was not evidence and

that he was only expressing a concern for his children's well-being. Nonetheless, we see no error in the referee's conclusion that plaintiff's statement was "inappropriate and alarming." There were emotional stability issues with two of the children, and there were also concerns about plaintiff's behavior during parenting time, such as his unwillingness to allow defendant telephone contact with the children, his negative statements about defendant made in the presence of the children and his involvement of the children in the dispute by asking questions about defendant's boyfriend. Finally, defendant feared that plaintiff would take the children and leave if the court ruled against him, and given his previous failures to abide by the court's orders these concerns were not unfounded. Accordingly, there was evidence presented to support the conclusion that factor (f) supported supervised parenting time. Moreover, the trial court ordered that plaintiff's parents could serve as the parenting-time supervisors and so the requirement of supervision was less burdensome as it did not require that an agency or non-family member conduct the supervision. The referee's findings were not against the great weight of the evidence, and the trial court's grant of supervised parenting time to plaintiff was not an abuse of discretion.

Affirmed.


/s/ Douglas B. Shapiro
/s/ Michael F. Gadola
/s/ Christopher P. Yates