*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SCOTT AARON MABREY,

        Defendant-Appellant.

FOR PUBLICATION
March 11, 2026
11:53 AM

No. 374947
Berrien Circuit Court
LC No. 2024-039303-FH

Before: SWARTZLE, P.J., and MALDONADO and ACKERMAN, JJ.

ACKERMAN, J. (*dissenting*).

The question in this case is whether the trial court clearly erred in valuing a stolen commercial lawnmower at more than $17,500 for purposes of scoring Offense Variable (OV) 16.[1] Our role is not to determine the lawnmower's fair market value in the first instance. Rather, it is to decide whether the trial court's valuation, reached after considering competing evidence, was sufficiently supported by the record to survive clear error review. Because the trial court's finding fell within the range of permissible outcomes on this record, I would affirm.

As the majority correctly notes, we review for clear error the trial court's factual determinations underlying its scoring decision, and those findings must be supported by a preponderance of the evidence. *People v Rodriguez*, 327 Mich App 573, 576; 935 NW2d 51 (2019). Clear error exists only when we are left "with a definite and firm conviction that the trial court made a mistake." *Id*. at 583 (citation omitted). Critically, the clear-error standard "does not authorize a reviewing court to substitute its judgment for that of the trial court." *Fletcher v Fletcher*, 447 Mich 871, 894 n 11; 526 NW2d 889 (1994).

---

[1] As the majority notes, defendant does not dispute on appeal that the trailer he stole was worth $2,500. As a result, while the total figure relevant under OV 16 is $20,000, MCL 777.46(1)(d), the issue on appeal is whether the lawnmower was worth enough—over $17,500—to get over the $20,000 threshold when combined with the stolen trailer.

The fundamental question we must ask is how, if at all, depreciation should factor into the lawnmower's valuation. The trial court was presented with two pieces of evidence putting a price tag on the lawnmower's value: (1) the complainant's bill of sale reflecting a purchase price of $18,821.93 approximately ten months and 400 hours of use before the theft; and (2) an email from Jeff MacLeod, the manager of the Rigg's Outdoor Power Equipment store at which the lawnmower was purchased, stating that the "current value . . . would be between $15,000 - $16,000." The trial court considered both in scoring OV 16. When defense counsel argued that the amount stolen could not exceed $20,000 if the court "include[d] the depreciation and subtract[ed] the tax value," the court disagreed, noting that the lawnmower had been purchased for "just a few months" and had been used for only 400 hours before defendant stole it. The court also remarked that "[i]n fact, these things go up" before concluding that it "disagree[d] with that from that gentleman in Indiana [MacLeod], in this [case]," and sustained the 10-point score under OV 16. The relevant question, then, is whether the trial court clearly erred in concluding that the lawnmower's value exceeded $17,500. Framed numerically, did the lawnmower depreciate by at least $2,821.93, bringing its value down to the high end of MacLeod's estimate, or by $1,321.92 or less, which would leave its value over $17,500? In other words: did the trial court clearly err in concluding that the lawnmower was worth at least $1,500 more than MacLeod estimated?

In setting aside the trial court's scoring of OV 16 and its resulting sentence, the majority relies on three premises. First, it takes for granted that some depreciation must have occurred; this, it says, is "basic economics." Second, it concludes that the trial court found as a matter of fact that "there was no depreciation at all," which flatly conflicts with the majority's assumed necessity of depreciation. Third, having accepted that some depreciation must have occurred, it then requires the trial court to have accepted MacLeod's estimate, because it is the only datum in the record that quantifies the amount of depreciation. I disagree with each premise.

First, recent economic experience underscores that depreciation is not an immutable rule. Supply-chain disruptions, parts shortages, and fluctuating demand have, at times, increased the resale value of used equipment.[2] A trial court is not compelled to adopt depreciation as a categorical assumption, and we may not impose our own economic generalizations on the trial court's fact-finding. We do not know what we do not know. And whether appreciation actually occurred here is beside the point. The relevant point is that *we* are in no position to gauge the dynamics of this market, so I disagree that we "can assume . . . equipment depreciates."[3] On clear

---

[2] See, e.g.*,* Walsh, *Equipment Retailers, Landscapers Face Equipment Scarcity*, Crain's Detroit Business (April 26, 2021), p 6 (reporting pandemic-related parts shortages that constrained retail inventory for outdoor equipment, including lawnmowers); Nick Beres, *Have You Heard of the 'Lawnmower Index?' It'll Determine Whether You Can Cut the Grass* <https://www.newschannel5.com/news/have-you-heard-of-the-lawmower-index-itll-determine-whether-you-can-cut-the-grass> (posted May 5, 2025) (accessed February 7, 2026) ("Lawnmower shortages are already being reported due to several factors, including the demand for outdoor equipment, supply chain issues, and shortages expected from tariffs on parts.").

[3] Indeed, it is difficult to reconcile the majority premising its decision on "assum[ing] normality as a baseline," including that "equipment depreciates," with its assurance, a paragraph later, that it

error review of trial court fact-finding, I similarly do not believe that we can decide that a year-old lawnmower with 400 hours of use had been subjected to "ordinary wear-and-tear"; for all we know, such a device is essentially brand new in this industry.

Second, I believe the majority misconstrues the trial court's reasoning by characterizing it as having found that "this instance was one of those rare ones when there was no depreciation at all." As the majority recounts, when defense counsel argued that "you have to factor in depreciation, your Honor," the trial court responded "not necessarily," and observed that some assets appreciate in value. The court even acknowledged that "the vast majority of the time," assets depreciate, but it declined to "necessarily" accept that premise here and refocused the inquiry on "what's the fair market value of this item?" Defense counsel responded by pointing to MacLeod's estimate, but the trial court reiterated that "here, this person owned this thing for a matter of months" and that it "disagree[d] with" MacLeod.

In context, the trial court did not make a specific finding as to the precise dollar-figure amount of depreciation but instead acknowledged that, in the market for commercial equipment, assets *could* appreciate in value as part of its reason for declining to accept MacLeod's asserted level of depreciation. That matters, because the majority cannot deny that the trial court considered MacLeod's estimate. Ordinarily, that would render the trial court's assessment of his estimate a credibility determination, to which we must give special deference. The majority nevertheless discards the trial court's judgment because of its remark that some assets like this appreciate in value, a statement that violates the majority's economic presumptions. As noted, I do not believe those presumptions are sound; but even if they were, I believe the majority sees an affirmative finding that the lawnmower appreciated in value when in context the trial court was only casting doubt on MacLeod's estimate.

Third, I disagree with the notion that the trial court was obliged to accept MacLeod's specific estimate of the lawnmower's depreciated value. The majority identifies him as "[t]he person with the most knowledge of the lawnmower and the relevant market." Those are factors arguably weighing in favor of his credibility. But there are countervailing facts: it is also true that his email does not indicate that he inspected the lawnmower, reviewed its condition, or relied on any identifiable market data. The email also provides no methodology. The valuation appears in a brief, unsupported email that the trial court was entitled to discount—and it did. On appeal, we may not reweigh that evidence. The record does not establish that MacLeod's estimate was so authoritative that rejecting it constituted clear error. The trial court rejected the estimate because "this person owned this thing for a matter of months" and confirmed that it had specifically been owned for "[e]leven months" (and during this colloquy, defendant chimed in that the lawnmower "[h]ad 400 hours on it"). In assessing 10 points for OV 16, the court necessarily found only that the lawnmower was worth at least $1,500 more than MacLeod's estimate. That conclusion was not irrational.

The majority's approach effectively converts clear error review into de novo fact-finding. By treating the email estimate as dispositive and invoking general economic principles to override

_____

"assert[s] no 'immutable rule' of market forces." Applying such presumptions a priori is, in my view, unwarranted when we must rely on facts found by the trial court.

the trial court's weighing of the evidence, the majority departs from the deference that clear error review requires. Our precedents do not permit that. See *People v Walters*, 266 Mich App 341, 352; 700 NW2d 424 (2005) ("The reviewing court should give deference to the trial court's determination of credibility and may not substitute its judgment for that of the trial court."); *People v Ziegler*, 343 Mich App 406, 410; 997 NW2d 493 (2022) (acknowledging that "the clear-error standard requires us to affirm unless we are definitely and firmly convinced that the trial court made a mistake").

Because the trial court's valuation finds adequate support in the record and does not meet the demanding threshold for clear error, I would affirm.

/s/ Matthew S. Ackerman

-4-